M. J. Atkins & Company, plaintiffs in error, *vs.* J. L. & R. H. Cobb, defendants in error.

1. The copy of the draft and indorsement thereon, annexed to a declaration, framed in the brief statutory form, is part of the declaration itself, and may be used to aid defective allegations. The indorsement need not be alleged if it is copied.

2. An indorsement "for collection," made by the payees, is canceled by their subsequent indorsement to other indorsees for value.

3. When the defendants are allowed to defend as fully as if the bill had not been negotiated, it is immaterial on what consideration, or for what purpose, or with what motive, the payees transferred or the plaintiffs acquired, title to the paper.

4. Unfriendly feeling between the parties should not go in disparagement of the defense. The motive that induced the filing of the plea is immaterial; the question for the jury is whether the plea is true or not true.

5. Goods ordered are, after acceptance, presumed to be of the quality ordered. The burden of proving them inferior is on the purchasers, who must establish the fact with that degree of certainty which suffices in civil cases generally. They need not go beyond this in clearness or force of evidence.

6. That the purchasers made partial payment, with knowledge that the goods were, in quality, inferior to those ordered, will not hinder them from pleading the defective quality as partial failure of consideration when afterwards sued for the balance of the price.

7. The abatement of the purchase money for goods sold with warranty of quality, express or implied, should be equal, at least, to the difference between the agreed price and actual value as reduced by defective quality. Purchasers are entitled to this abatement whether, in disposing of the goods,

they lost anything or not. What they realized is of no consequence, except as it may tend to illustrate the question of value.

8. In order for a sale to illustrate value, the medium of payment, as well as the price, should be regarded. If the sale were for uncurrent funds, the value of such funds at the time and the place of the transaction is material.

9. On a plea of partial failure of consideration for defect in quality of goods, it is not competent for the purchasers to prove, in general terms, that they sold a large quantity of the goods for uncurrent funds, and that the funds were a total loss.

Pleadings. Indorsement. Negotiable instruments. Sales. Presumptions. Warranty. Evidence. Before Judge TOMP-KINS. Randolph Superior Court. May Term, 1875.

Reported in the opinion.

A. HOOD; H. & I. L. FIELDER, for plaintiffs in error.

B. S. WORRILL, for defendants.

BLECKLEY, Judge.

1. The action was against the acceptors upon a bill of exchange, and was in the short form allowed by the Code, section 3391. The bill was payable to the order of the drawers, and no indorsement by them was alleged or set out in the body of the declaration. A copy of the bill as accepted, and a copy of an indorsement thereon by the payees to the plaintiffs were annexed to the declaration, and these, we think, constituted a part of the declaration itself. Our brief statutory declarations are not intended to be complete without full copies of the instruments declared upon, and such copies may always be used in aid of informal or defective allegations. Taking the whole together, there was a cause of action set forth in this declaration in favor of the plaintiffs against the defendants, and the demurrer was therefore properly overruled : See *Jennings vs. Wright & Company, 54 Georgia Reports*, 537; *Bank of Americus vs. Rogers, 55 Ibid.*, 29.

2. When the bill was tendered in evidence it had upon it two indorsements from the payees, one to Gunn "for collection," and the other to the plaintiffs "for value received."

The former was without date; the latter was dated four days before the present action was brought. An indorsement for collection is, as against the indorser, a mere power of attorney to receive the money. It imports an agency to collect, and nothing more. The bill remains the property (in equity, at least,) of the indorser; and when it is returned to him, he may sue and recover upon it in his own name without erasing the indorsement: 2 Parsons on Notes and Bills, 442; 22 *Georgia Reports*, 24. If, instead of bringing suit, he negotiate the bill, and indorse it over for value, the second indorsement necessarily revokes the agency created by the first. It cancels the first indorsement as effectually as could be done by erasing it. The indorsement for collection did not, therefore, stand in the way of the plaintiff's title to the bill, under the indorsement made to them for value; and the objection to receiving the bill in evidence was not sustainable.

3. The title of the holder of negotiable paper cannot be inquired into further than is necessary for the protection of the defendant or to let in the defense which he seeks to make: Code, section 2789; 31 *Georgia Reports*, 300. The court charged the jury that the plaintiffs, having taken the bill after maturity, stood in the same position as the payees in reference to the defense set up and the equities between the parties. In connection with this charge, it was altogether proper for the court to instruct the jury as it did, to the effect that the defendants had no concern with any fraud intended by the payees in parting with the bill, or by the plaintiffs in procuring it, or with the motive, purpose or consideration involved in the transfer. The indorsement was regular; the payees were making no contest with the plaintiffs, and the defendants had no right to make any, on the *bona fides* of their title. It was wholly irrelevant to the issue on trial whether the plaintiffs took the bill on speculation, as the defendants' counsel contended, or not.

4. In like manner, it was no concern of the plaintiffs' what induced the defendants to set up the defense which they opposed to the action. The court erred, therefore, in charging

the jury that evidence of unfriendly feeling existing between one of the plaintiffs and one of the defendants might be considered by them in coming to a conclusion whether or not the defendants were induced to set up a defense to the bill in the hands of the plaintiffs, which they were not entitled to set up, and would not have set up to it, against the payees. The defendants had the same right to defend the action that the plaintiffs had to bring it. The motives of neither were in question. The plaintiffs might sue angrily and the defendants might defend angrily. The plea might have been filed in the worst of temper; but was it true? That was the question for the jury; and it was altogether needless for them to consider what induced the defendants to plead a false plea, or whether they would have pleaded it against the payees or not. The merit or demerit of a defense is not dependent, in any degree, upon the absence of friendly relations between [the parties. Friends and enemies stand on equal ground before the courts.

5. The bacon, for the price of which the bill was drawn and accepted, having been received by the purchasers and retained by them, the court was correct in charging the jury that the presumption of law, in the absence of evidence to the contrary, was that the article was of the quality ordered. It is doubtful, however, whether the charge was precisely accurate in the further statement that the contrary must be established *clearly* and satisfactorily by proof. The degree of certainty required in civil cases generally, is only that which results from a preponderance of testimony: Code, section 3749. The proof should go far enough to be satisfactory to the jury, but this it might do, perhaps, without being perfectly *clear:* 7 *Georgia Reports,* 467. The jury are not much concerned with any characteristics of the evidence except truth and force. Some degree of obscurity, and even of confusion, may exist without destroying its credit or robbing it of the power to produce conviction. The clearest evidence is not always the most trustworthy.

6. There were two credits on the draft, one for cash and one for hams returned. The court charged the jury that if

they believed the defendants, "after they had received the bacon and inspected the same and knew its quality, made payments on the draft, the jury can look to all the facts and see if they have a right to set up the plea of failure of consideration, and if not; are bound to pay the entire balance due on the draft." Even if this charge is not objectionable for assuming inspection, etc., before the payments were made, it seems erroneous, for the reason that it submits to the jury for their decision a question of law, namely: whether the defendants had a right, under the circumstances named, to set up the plea of failure of consideration. We think, as matter of law, that the defendants did have the right, and the judge should so have ruled instead of referring the question to the jury. Whether the plea was true was for the jury; but whether the defendants had a right to set it up, notwithstanding partial payments had been made, was for the court. By plea of "failure of consideration" we take it for granted that the court meant partial failure of consideration, for that was the kind of plea filed; not one of total failure.

7. The object of the plea was to obtain an abatement of the purchase money for defect in quality of the bacon. The evidence tended to show that some of the bacon was unsound; that it was bought for first quality, and turned out to be, as to a part of it, far inferior; indeed, quite, or very nearly, worthless. The agreed price was thirteen and a half cents, and the actual average value, according to the evidence of one of the defendants, was not more than eight cents. The plea alleges that it was not above nine cents. The true rule of abatement, in the absence of special damages, is to reduce the agreed price as much as the actual value is reduced by reason of defective quality. Where quality is warranted, expressly or by implication, that much abatement, at least, may be exacted by purchasers, whether, on re-sale, they actually sustain loss or not: 46 *Georgia Reports,* 261, 464. What is realized on re-sale may illustrate value, but, except for that purpose, is not pertinent to the issue. The court erred, therefore, in charging the jury that defendants must show what

amount they *lost,* and if they have lost nothing, the plaintiffs are entitled to recover the full amount sued for, whether or not the bacon was of the quality sold, or whether it was worth full price or was of little or no value.

8. A certain parcel of the bacon was sold in bulk by the defendants, and was afterwards ascertained to have been unsound and unsalable. The purchaser being on the stand as a witness for the defendants, he was directed by the court to state the price at which he purchased. Having answered that it was eighteen cents, he was not permitted by the court to add that he paid " Kimball currency," which was, at the time, uncurrent, and that he would not have purchased if he had had to pay in any other currency. What the price represented was as material as the price itself. When an actual sale is proven to illustrate value, the kind and value of the funds in which payment is to be made, should be taken into account. But the court, throughout the trial, seems to have gone upon the theory that though the bacon was unsound, the verdict was not to be governed by the question of value, but by the fact of loss or no loss to the defendants. This theory, as we have seen, was wrong. Yet, even upon this erroneous theory, we are unable to see why the court excluded the evidence under consideration. Surely if eighteen cents in " Kimball currency " was less than eighteen cents in money, the defendants lost more in a given transaction than if they had sold for money instead of the " Kimball currency."

9. The court was right in excluding evidence, in general terms, that the defendants sold much of the bacon for " Kimball currency," and that the currency was a total loss. What was the bacon worth? Transactions in it which did not throw light on that question could have no proper place in the testimony.

We abstain from expressing any opinion of our own upon the sufficiency of the evidence to uphold the verdict. We have confined ourselves to correcting what we deem errors of law committed by the court. For these errors a new trial is granted.