THE GEORGIA REFINING COMPANY *vs.* THE AUGUSTA OIL COMPANY.

| 74 | 497 |
|----|-----|
| 94 | 49 |
| 74 | 497 |
| 95 | 426 |
| 74 | 497 |
| 121 | 274 |

1. There was no error in refusing to dismiss the motion for new trial in this case. The facts do not show *laches* in the movant to such a degree as to demand its dismissal.

(*a.*) Even if the motion for new trial should have been dismissed for *laches* in the movant, yet here the new trial was refused on terms,

and the respondents in the motion acted on the judgment, and ratified it by voluntarily writing off the interest, as required by the terms imposed.

2. Where a buyer agrees to purchase personal property from a seller and pay a certain price for it, and then refuses to take it and pay for it, the seller may keep it as his own, and recover the difference between the market price at the time and place of delivery and the contract price, as the measure of damages.

3. The case is not within the statute of frauds. The contract is recognized in many letters of the defendant, and was partly performed.

4. The jury having found for the plaintiff in respect to the quality of the oil involved in controversy—that it came up to the standard agreed upon by the parties, there being evidence to sustain the finding, and the court below having approved it, this court will not interfere.

5. There was no error in refusing to force plaintiff to elect one or the other of the counts or to grant a non-suit.

6. There was no error in putting the burden on the buyer to show that the oil did not come up to the standard fixed in the contract, of being prime oil, after its acceptance by the buyer.

7. If the buyer, after testing the oil, made no immediate objection to it, but continued to exercise acts of ownership over it, such as insuring it or offering to mortgage it, such acts would, after examination, amount to an acceptance at the contract price.

8. There was no error in charging that, after the goods had been delivered and a portion sold by the buyer, he could not rescind the contract, but would be liable for the value of the goods. And this principle was applicable to a case where the buyer agreed to take all the oil manufactured during the season and receive it at the seller's warehouse in parcels, and did receive some parcels, and then refused to receive the balance, when tendered in good quality and quantity according to the contract.

9. The requests to charge, so far as they are applicable to the facts and bear upon the law of this case, appear to be embraced in the general charge; and the law of the entire case was submitted in that charge fairly and fully to the jury.

March 10, 1885.

New Trial. Practice in Superior Court. Estoppel. Damages. Contracts. Vendor and Purchaser. Statute of Frauds. Burden of Proof. Sales. Charge of Court. Before Judge RONEY. Richmond Superior Court. April Term, 1884.

The Augusta Oil Company sued the Georgia Refining Company, alleging that there was an indebtedness of $4,532.99, besides interest, on a contract of March —, 1883, to sell all the crude cotton seed oil that petitioners had and would manufacture during their pending manufacturing season, delivery beginning the second week in April, 1883; that the Refining Company was to take and pay forty-five cents per gallon for each lot of fifty barrels, as received; that, as manufactured, the Oil Company was to store the same in their warehouse until each lot of fifty barrels was made up, which the Refining Company was to receive and pay for weekly. Upon all such as should not be promptly removed and paid for, the Oil Company was to receive reasonable storage for the period it should remain beyond the time of its contemplated receipt, and interest on the purchase money from the date at which it should have been paid; that the oil was to be the property of the Refining Company, from its storage in the Oil Company's warehouse, which was to be a delivery, and the oil should be insured by the Refining Company at their own risk and cost to an amount equal to the value of the oil, loss, if any, payable to the Oil Company as their interest might appear; that the Oil Company stored the oil in their warehouse, complied with their contract, and that the Refining Company refused and made default, after receiving and paying for three lots of said oil of fifty barrels each, making contradictory statements until September 8th, 1883, when it notified the Oil Company it rescinded the contract and would not pay the balance.

There was a second count upon "the bill of particulars annexed, and due as follows:" That on March —, 1883, they were manufacturers of crude cotton seed oil for sale; that the Refining Company bought six hundred and sixty (660) barrels of said oil at forty-five (45) cents per gallon, deliverable weekly, in lots of fifty (50) barrels, beginning the second week in March, 1883, and to be paid for as removed weekly; that said deliveries were to be made by

placing the same in the warehouse of the Oil Company, and storage and interest paid to them upon all such oil and payments as the Refining Company should not remove and pay for weekly; that the said Refining Company, after receiving and paying for one hundred and fifty (150) barrels, failed and refused to receive and pay for the balance, whereby the Oil Company was endamaged by a breach of the contract as set forth in the account, which said Refining Company refuse to pay. This count also prays for process against the Refining Company to answer petitioners' complaint.

Attached to the declaration was an open account which showed a balance of $4,532.99, charging $316.70 as interest.

The Refining Company pleaded *non assumpsit;* the statute of frauds; fraud in the making of the contract as to the quality of oil to be manufactured, whereby the quality was not disclosed to the defendant; failure of consideration, for failure of the goods manufactured to correspond with the goods purchased, and a partial failure as to all of the goods except two lots, amounting to sixty barrels, and one lot of fifty barrels accepted and found not to be "prime crude oil."

On the trial, the evidence for the plaintiffs was, in brief, as follows: The Augusta Oil Company is a partnership, composed of Sperry and Thompson, the former having charge of the mill. He contracted with defendant in the latter part of March. Defendant was to take all the oil which plaintiffs should make during that season, including that on hand. It was to be stored in plaintiffs' warehouse, and defendant was to take it out in lots of fifty barrels, paying for it as taken out at the rate of forty-five cents per gallon. Sperry stated that he considered it good or prime oil, but it was not sold on a contract that it should be such. Samples of the quality of oil which the plaintiffs were making were exhibited to the officers of the defendant, and they examined them and bought. Plaintiffs completed the season's work in May. having made altogether 660

barrels of oil.   Defendant's officers stated that they would
be ready to begin taking it from about the date of the
contract, and could work off about 120 barrels per week.
They did not, in fact, take any until June 2, when they
took fifty barrels, and later in the same month took fifty
more.   On May 12, Sperry invoiced to them 450 barrels,
and on May 17 the balance, and furnished them invoices,
and held the oil in the warehouse as defendant's.   De-
fendant was to insure it, with loss payable to plaintiffs as
their interest might appear, and one of the officers of de-
fendant stated that this had been done.   A third lot of
fifty barrels was taken by defendant, but the officers ob-
jected to it and desired to return it.   Sperry was absent
at the time, and was telegraphed to by his superintendent,
Goodloe, and replied that Goodloe might receive this oil
back on storage and furnish another lot, consisting of a
fourth fifty barrels, but that he was not to receive the
third lot as rejected.   At the time of the contract, storage
was not contemplated, but subsequently defendant agreed
to pay it.   Defendant sought to utilize the oil as security
for money.   On September 8, defendant refused to take
any more oil.   Sperry then credited the five hundred bar-
rels remaining on hand to defendant at what at that date
was the market price, namely, 27½c. per gallon.   He did
not advertise it for sale or try to get any purchaser, but
merely credited it to defendant, taking it at the then mar-
ket price.   Subsequently, on October 9, he sold it at 31c.
per gallon.   He could not say that his instructions to
Goodloe were communicated to the defendant.   Goodloe
testified that Thornhill, the superintendent of defendant,
made chemical tests of the third lot, objected to it and
desired to reject it; that it was prime oil; that while
Thornhill claimed a difference in color and chemical test,
yet, when the samples were mixed, he could not tell the
difference by sight, taste or smell; also that he said to
Thornhill that if the market had not declined, there never

would have been any trouble about the oil, and that Thornhill agreed to this.

The evidence for the defendant was, in brief, as follows: Sperry sold to defendant certain oil, specifying that it was to be first-class oil and prime good oil, and on this basis defendant made the contract. Sperry would not agree to deliver more than four hundred barrels. These were to be delivered as defendant was ready for them, its machinery not then being ready. Its capacity was about ten barrels per day, and defendant was to take the crude oil in lots of fifty barrels when its refinery was ready. The first and second lots were received and refined with good results. The third lot did not come up to the grade bargained for, nor would it yield to the same treatment as the first and second lots, though repeated attempts were made to make it do so. Tests were made upon it, and a marked difference was found. This lot was rejected and returned to the plaintiffs, and was received by them, and a fourth lot delivered. This was worked off, but the product was not as good as that of the first and second lots, though better than the third. Numerous chemical tests and comparisons with oil from other places were made, and the oil furnished by the plaintiffs was of a lower grade than any of the balance. Upon finally becoming satisfied of this, defendant declined to take any more oil from the plaintiffs. In the meantime, the market had become overstocked, prices had declined, the Refining Company could not realize on their refined oil and had not sufficient capital to pay for another lot of fifty barrels, and the Oil Company refused to make further deliveries without cash payments. Samples of oil were put in evidence by defendant. Thornhill denied the admission testified to by Goodloe. The price of prime crude oil had not declined to 27½ cents; in September, 30 cents was paid for oil, and that not prime. The difference between the price in Augusta and in New York was two and a half cents a gallon.

Numerous letters between the parties were introduced

in evidence, in which they recited the fact that the defendant was to take the oil in fifty barrel lots at 45 cents per gallon, and discussed at length the situation and the differences between them.

The jury found for the plaintiffs $4,532.99, and judgment was entered for that amount as principal, and interest thereon from May 5, 1884. Defendant moved for a new trial, on the following among other grounds:

(1.) Because the court refused to non-suit the plaintiffs, or require them to elect as to which count they would proceed upon, defendant averring that the declaration set forth separate and independent causes of action, which required them to file contradictory pleas, and which causes of action could not be joined.

(2.) Because the court charged as follows: " If the jury believe from the evidence that the oil was delivered to and accepted by the Georgia Refining Company, the burden of proof is upon it to show that it was not prime oil, and in considering the question as to whether the oil was or was not prime oil, the jury may consider the date of the contract of sale, the date of the delivery of any invoice, the length of time the oil was held without objection, the length of time it was held after testing it, and whether objection was made at once or at a later day after the testing. They may also consider any evidence, if any, showing a fall in the price of oil."

(3.) Because the court charged as follows: " If the jury believe from the evidence that, after the oil was delivered to the Georgia Refining Company, it tested and examined the same and made no objections to the oil immediately, and continued to exercise acts of ownership over it, insured it in its own name or offered to mortgage it, then such acts, after examination and testing, would be an acceptance of the oil at the contract price, and defendant will be liable for it at the agreed price."—The error alleged being in assuming in this charge the delivery of the oil, which was a question at issue, and that the testing of the oil,

which still was actually in plaintiffs' possession, was such an act as would amount to an acceptance, and render defendant liable therefor.

(4.) Because the court charged the jury, at the request of the plaintiffs' attorneys, as follows: "After goods have been delivered and a portion sold by the buyer, he cannot rescind the contract, but is liable for the value of the goods sold and delivered."

(5.) Because the court refused to charge certain requests, which need not be set out in detail.

(6.) Because the court, after charging as follows at defendant's request, "that the plaintiffs, in making any sale of the oil sued for, warranted that the article sold was merchantable, and reasonably suited to the use intended, and that they knew of no latent defects undisclosed," added, "This is so, if not expressly warranted." —The error alleged being that by this qualification the court held that the plaintiffs admitted an express warranty, when the fact was disputed by the plaintiffs that they had sold any oil expressly warranted to be prime crude oil.

(7.) Because the court, in his general charge to the jury upon the subject of the plea of the statute of frauds, said: "You must consider the evidence, together with the law which I have given you, and see whether or not this contract is void, it not being in writing." And upon the subject of part performance stated, "If you are satisfied that there was a parol contract made for the sale of certain oil, that any part of the oil was accepted under the contract, or that there was a part performance of the contract on the part of the plaintiffs or the defendant, that takes it out of the statute of frauds, and it is as binding as if in writing. It is for you to say whether there is any evidence of that kind."

(8.) Because the court, in his general charge to the jury, stated: "If you believe from the evidence that the defendant agreed to purchase the amount of oil mentioned in

the declaration, at forty-five cents per gallon, and the plaintiffs delivered the oil, the grade agreed upon, in accordance with the terms of the contract, and subsequently the defendant notified the plaintiffs of their decision to rescind, and refused to take the oil and pay for it, and the plaintiffs credited the defendant with the value of the oil at the date of said recission, and if you believe that the market value then was twenty-seven and a half cents, then plaintiffs are entitled to recover the difference between twenty-seven and a half cents and forty-five cents a gallon for the number sold and not taken by defendant."— The error alleged being in ruling that plaintiffs might give the defendant credit without an actual sale, and based upon the then market price, and also ignoring the fact that one lot of fifty barrels, actually delivered by the plaintiffs to the defendant, had been returned by defendant, and received back by plaintiffs, the terms of the return and receipt being in dispute.

(9.) Because the verdict is contrary to the evidence, and without evidence to support it; because it is decidedly and strongly against the weight of evidence, and because it is contrary to the principles of law and justice.

(10.) Because the court limited his proviso as to what plaintiff should write off to the sum of $316.71, styled the interest, without fully defining what the interest was which was ordered to be written off.

The court refused the new trial, provided the plaintiffs would at once write off the interest ($316.70), and if this should not be done, the new trial should be granted. The interest was written off, and the new trial refused, and defendant excepted.

· Plaintiffs moved to dismiss the motion for new trial, on the ground that the defendant had not complied with the terms of the order granted by the judge, allowing the completion of the motion in vacation. The facts in regard to this were as follows: On July 2, 1884, the judge granted an order, reciting that the stenographer had not completed

the transcript of the evidence, and allowing the defendant ten days from the final adjournment of court in which to file a brief of evidence, " and if filed within that time, (it) shall stand until the hearing thereof;" and upon the hearing, the court would pass upon the same, with the motion for new trial. The order then proceeds:

" It is ordered that the said motion for new trial and the brief of evidence, when so filed, shall be heard and determined in vacation by the presiding judge, who shall pass upon the same as in term time, with liberty of amendment and of exception to either party; that the hearing, upon such motion, shall be at such time and place as shall be agreed upon by counsel and the court, and in default of such agreement, then at such time and place as said judge shall name and appoint upon ten days' notice to each party; that, upon the hearing upon the motion for new trial, the judge presiding shall approve the grounds of the motion and the brief of evidence, if not previously done; and until a final decision upon said motion, the verdict rendered, with the judgment entered thereon, shall stand suspended and stayed."

In support of this motion, various affidavits were introduced, showing, in brief, the following facts: Court adjourned on July 5. On July 14, W. H. Fleming, Esq., of counsel for movant, informed the stenographer that he was about to leave the city and wished the brief of evidence filed. The stenographer replied that he would assume the duty of filing it within the time prescribed by law, and the entry of filing was dated July 15. No specific reference was made to the documentary evidence. In the brief which was filed, the letters, etc., were referred to as exhibits. On the morning of July 16, one of counsel for movant, in the presence of one of counsel for respondents, stated that it was the last day for filing, and the clerk spoke of it as filed, and no objection was made. After receiving the brief from the stenographer, Mr. Fleming applied to counsel for respondents for the documentary evidence in their possession. One of them replied that he thought it was at the court-house in a trunk, but he would get it. Subsequently, on July 18, Mr. Fleming again sent for and received it, and proceeded to attach copies of the documents to the brief on the 19th. A second entry of filing is dated

July 25. The motion to dismiss was overruled. A bill of exceptions *pendente lite* was filed. On the hearing in the Supreme Court, counsel for defendants in error moved to assign error on the ruling set out in this bill.

W. H. FLEMING; FRANK H. MILLER, for plaintiff in error.

FOSTER & LAMAR, for defendants.

JACKSON, Chief Justice.

The Augusta Oil Company sued the Georgia Refining Company for breach of contract, and recovered a verdict. Whereupon a motion was made for a new trial, and its denial, on the grounds therein stated, is the error assigned.

1. There was no error, as alleged in the plaintiffs' bill of exceptions, conceding that it is good as an interlocutory bill of exceptions, in declining to dismiss the motion for a new trial. The facts do not show *laches* in the defendant to such a degree as to demand its dismissal; but if they did, the plaintiffs themselves acted upon the judgment on the motion for the new trial and ratified it, by voluntarily writing off the interest, as required by the court, to permit the verdict for the principal sum to stand.

2. The principle of law on which the recovery is based, and under which the jury found for the plaintiffs when it was given in charge by the court, and which is excepted to here, is to the effect that where the buyer agrees to purchase personal property from the seller and pay a certain price for it, and then refuses to take it and pay for it, then the seller may keep it as his own and recover the difference between the market price at the time and place of delivery and the contract price, as the measure of damages for the buyer's breach of the contract. Such is the law. Benjamin on Sales, section 1165; 2 Watts & Sergt., 219; 63 Mo., 567; 12 N. Y., 50; 8 Watts, 239; *Groover, Stubbs & Co. vs. Warfield & Wayne,* 50 *Ga.,* 644.

3. The case is not within the statute of frauds. The contract is recognized in writing in many letters of the defendants, and was partly performed, either of which facts takes it without that statute. 29 *Ga.*, 294; Code, §1951, sub sec. 2.

4. The jury found for the plaintiffs in respect to the quality of the oil, that it came up to the standard agreed upon by the parties, and there is evidence to sustain their finding and its approval by the judge below. Therefore the verdict and judgment must stand, if there be no error of law apparent in the record of sufficient materiality to require another trial.

5. There was no error in refusing to force plaintiffs to elect one or the other of the courts, or non-suit them.

6. There was none in putting the burden on the buyer to show that the oil did not come up to the standard in the contract of being prime oil, after its acceptance by the buyer.

7. Nor was there error in charging that, if the buyer, after testing the oil, made no immediate objection to it, but continued to exercise acts of ownership over it, such as insuring it or offering to mortgage it, such acts would, after examining and testing it, amount to an acceptance at the contract price.

8. Nor do we see error in telling the jury that, after goods have been delivered, and a portion sold by the buyer, he cannot rescind the contract, but would be liable for the value of the goods. It appears applicable to the facts where the buyer agreed to take all the oil manufactured during the season, and receive it at the seller's warehouse in parcels, and does receive some parcels, and then refuses to receive the balance delivered according to the contract, when tendered in good quality and quantity according to the contract.

9. The requests to charge, so far as they are applicable to the facts and bear upon the law of this case, appear to

us to be embraced in the general charge, and the law of the entire case was submitted in that charge fairly and fully to the jury.

Judgment affirmed.