MILLER & COMPANY *v.* MOORE, SIMS & COMPANY.

1. In the sale of goods by words of description which comprehend quality as well as variety, the descriptive words may be trusted by the purchaser as a warranty of both, and though inspection by him before acceptance will exclude from the warranty all patent defects, it will have no influence on those which are latent.

2. Defects not discovered by the inspection actually made, and not discoverable by such as ought to have been made, are properly classed as latent. Hence corn musty and "blue-eyed" packed in

bulk beneath sound corn, is a latent defect ·in the whole lot as a car-load, delivery and acceptance being made without breaking bulk or unloading the car.

3. A custom of trade in the city of Augusta, by which, contrary to the general law of the State, acceptance of corn in bulk and paying for it after inspection are considered as waiving or releasing all claim upon the seller to answer for any defects of quality, is not binding except upon those who have recognized it in their own transactions and thus adopted it for their own dealings. ·

4. The contract of sale embracing thirty car-loads of corn in bulk, to be delivered on board by the car-load at the point of destination, a defect of quality in some of the corn accepted and paid for will not justify the buyer in rejecting ten other car-loads subsequently tendered according to the contract, neither of the parties electing or intending to rescind or abandon the contract in whole or in part.

5. In the present case, according to the weight of the evidence, the purchaser, some of the corn accepted and paid for having been de-defective, is entitled to recover for breach of warranty, and the seller is entitled to recover for breach of contract in rejecting cars which ought to have been accepted.

6. A part of the sum sued for being the expenses of resale, and the broker who made it being a witness for the plaintiff, it was proper to inquire of him on cross-examination not only as to the amount of his commissions, but whether they had been paid or not.

November 18, 1889.

Sales. Description. Warranty. Vendor and purchaser. Custom. Contracts. Evidence. Principal and agent. Before Judge RONEY. Richmond superior court. April term, 1889.

Moore, Sims & Co. sued Miller & Co., alleging as follows: About June 10, 1884, plaintiffs, through their broker, Kent Bisell, sold to defendants 30 cars of "No. 2 white mixed corn bulk" at 66 cents per bushel, to be delivered in Augusta and to be paid for on arrival there after opportunity afforded buyers to inspect the same. Invoices and drafts were sent with and for each car; and within one or two days after the arrival of the corn, it was the duty of defendants to inspect it, and if it was in good condition and up to grade, to accept it and pay the drafts with exchange. Plaintiffs began shipping

the corn about June 11, 1885, and defendants for a time received and paid for it. Among the cars were two designated as "E. T. & H. No. 1115," which arrived in Augusta June 15, 1885, and "Ill. C. No. 1619," which arrived June 26, 1885, both of which defendants accepted, inspected and paid for as the corn was in good condition, and they so found at the time of payment, and the corn was from the date of acceptance and payment their property, and plaintiffs were not liable for its continued good condition, but the inspection and acceptance made the sale and delivery complete, and the payment by defendants of the drafts closed the transaction in reference to these two cars. Subsequently, in inspecting other lots, defendants, before acceptance, discovered that car "Cin. So. No. 2780" and car "Cin. So. No. 2927" were out of condition, being damp, and these two cars plaintiffs took back and furnished two other good ones in their stead. About July 9, 1885, there were 10 cars of the 30 at the Augusta depot of the Georgia railroad, and defendants had inspected them, and the corn was in good condition and up to grade, but the drafts drawn for them had not been paid by defendants, though it was their duty to have done so. Plaintiffs resold car No. 2927 to defendants for 64 cents per bushel, but after they had agreed to take it and before paying for it, they asked plaintiffs what rebate would be allowed upon the two cars first named, which two defendants after acceptance had allowed to remain upon the track so long that the railroad, in pursuance of its rule to "elevate," all corn remaining on the track longer than 72 hours, had begun to "elevate," and the off condition of these two cars (if any there was) was caused by defendants' leaving the corn in close, hot cars too long, and such off condition (if any there was) was discovered and reported by the inspector in charge of the elevator, and

not until then did defendants make complaint. These two cars having been inspected, passed and paid for and left on the track by defendants, plaintiffs refused to be responsible for any damages to them, whereupon defendants refused to pay for the cars of damp corn which they had just accepted at 64 cents, and also refused to pay for or protect the drafts for the ten cars which had been inspected by them and passed but not paid for. Plaintiffs resold the car of damp corn, and make no claim therefor, but as to the 10 cars, they sold them for the account and at the risk of defendants, and to protect plaintiffs so far as possible from loss ; but in the resale, though plaintiffs exercised due care, they realized but 63 cents per bushel, which for the 10 cars amounted to $3,754.12, whereas at 66 cents the amount would have been $3,932.89. In selling these 10 cars, plaintiffs were obliged to incur an expense of $25 for brokerage, and to pay $9.39 exchange on the drafts drawn against these cars, which drafts with exchange defendants were bound to pay. Subsequently, the rate of freight on corn to Augusta was advanced, and defendants demanded the residue of the cars, nine in number, due upon the 30 car-load sale, and plaintiffs shipped the same, and defendants accepted and paid for them. Plaintiffs demanded of defendants the $213.16 made up of the difference in sales of the 10 cars, and of brokerage and exchange, but defendants refused to pay it. There was also a count for indebtedness on account, amounting to $213.16.

The defendants pleaded the general issue ; and as follows : When plaintiff's resold the 10 cars, they did not sell them for as much as they were reasonably worth but at less than the market value; if they had sold them at market price, and after proper effort, they would not have been damaged as claimed, as, on the day of sale, corn of the grade ordered by defendants of

the plaintiffs was selling at the market price thereof. Car. I. C. 1619 was not "No. 2 white mixed corn bulk," but when delivered to defendants, was musty and below the grade ordered; the corn in car E. & T. H. No. 1115 was not up to the grade ordered, but when delivered was musty and blue-eyed. The corn in car C. S. No. 936 was musty and below grade. At the time of the arrival of said corn, the defendants paid for it at 66 cents, supposing it to be of the grade ordered and without notice or knowledge that it was damaged or inferior. Thereafter they were notified by the agent of the Georgia Railroad Co. that, upon preparing to "elevate" the corn, it was found to be in the condition above stated; whereupon they notified plaintiffs, and expecting that the justness of the claim would not be denied, when the 10 cars mentioned were tendered and payment demanded, defendents asked that from the price of them the amount of damage be deducted, which plaintiffs refused to do. By reason of the delivery of said musty and blue-eyed corn plaintiffs are indebted to defendants $268.69, for which they pray judgment. The 10 cars mentioned were not of such corn as had been ordered, but were of inferior grade, being damp and musty, and were not a good tender of such corn as ordered. Defendants attached a bill of particulars as to the three cars, 936, 1115 and 1619, in which the value of the damaged corn was stated as being only 50 cents per bushel, making the difference claimed of plaintiffs on these three $238.69.

Under the evidence and the court's charge, the jury found for plaintiffs $153.57, and defendants moved for a new trial on the following among other grounds:

Error in refusing to charge:

(*a*) The jury are to try in this case the action of the plaintiffs and the set-off of the defendants, and to say,

after an examination of both, who is entitled to a verdict.

(b) If Moore, Sims & Co. agreed to ship Miller & Co. 30 cars of No. 2 white mixed corn, and shipped corn which was in fact not No. 2 white mixed corn, and in ignorance of the same Miller and Co. paid the contract price for it, Moore, Sims & Co. would be indebted to Miller & Co. the difference between the price paid and what the corn was really worth.

(c) If Moore, Sims & Co. shipped corn below No. 2 white mixed to Miller & Co. and refused to allow or pay Miller & Co. the damage done thereby, the latter would be under no legal obligation to accept any other corn shipped in pursuance of the same contract.

(d) Until the whole contract was filled by the shipment of the 30 cars, the contract was executory, and if part of that delivered had proved below the grade, that would be a good reason for Miller & Co. to refuse to accept possession of other goods tendered.

(e) If part of the corn tendered July 9, 1885, was not No. 2 white mixed, then Miller & Co. had a right to refuse to take any of the lot so tendered.

(f) Section 2652 of the code.

(g) An express warranty is a warranty against latent defects; and if you believe from the evidence that Miller & Co. inspected corn in the ordinary way of inspection, and without negligence failed to discover any defect, and if thereafter any latent defect should be discovered by Miller & Co., and the jury believe that the corn had a latent defect at the date of delivery to them, then Miller & Co. would be entitled to recover of Moore, Sims & Co. the difference between the price paid and the value of the corn on the day of delivery.

Error in charging:

(a) "If you believe from the evidence that 30 cars of corn were sold at 66 cents per bushel delivered in Au-

gusta to be paid for after inspection by the buyers, Miller & Co., then they were bound to accept and pay for all corn which came up to the grade contracted for, when tendered within the time covered by the contract.

(*b*) "After inspection or opportunity for inspection by Miller & Co. and acceptance of the drafts drawn against the corn, the sale became complete, and the sellers were no longer responsible for the good condition of the corn.

(*c*) "If after acceptance of the corn as above, it got out of condition, then Moore, Sims &. Co. were under no legal obligation to make the same good, but they had a right to go on and tender the balance of the corn due under the contract, and Miller & Co. were bound to receive such cars as were up to the grade.

(*d*) "If at any time there were 12 or more cars on hand and two or more were not up to grade, then Miller & Co. were only bound to receive those that were up to grade, and plaintiffs would be bound to furnish other cars up to grade."

Error in charging: "After an opportunity to examine and inspect, they (defendants) cannot set up any defect but would be estopped by their inspection and acceptance followed by payment, except for latent defects. But if it was a patent defect, such as musty or blue-eyed corn, patent on its face, and the defendants had an opportunity to examine it, and after examination accepted and paid for it, then it is an executed contract, and you cannot find for Miller & Co. on their claim of set-off."

Bisell was asked by plaintiffs' counsel what was the custom in the Augusta corn market about the consideration of the transaction ending when the corn had been inspected, accepted and paid for? whose corn was it? had the seller anything more to do with the corn and its condition? He answered that, under the custom in

Augusta, after corn had been delivered, inspected, accepted and paid for, it was considered the buyers', and the sellers had nothing more to do with it, nor were they then responsible for any damaged condition in which it was at the date of delivery. The defendants objected to this testimony because the law determines the effect of delivery, inspection, acceptance and payment of the corn, and custom is immaterial except as it follows the law; and because the custom must be proved to be so general and universal as to show that it entered by implication into the contract. The testimony was admitted, and error was assigned.

Error in refusing to allow defendants to ask Bisell if Moore Sims & Co. had paid him the brokerage sued for, to show that it had not been paid, thus disproving that much of plaintiffs' account and tending to show interest of witness in the suit.

Error in charging: "If the jury believe from the evidence that the corn was to be delivered in car-load lots in Augusta, and that before acceptance the buyer had the opportunity of inspecting it, and did inspect it, and after inspection paid for it, as to such corn so inspected, accepted and paid for the contract was to that extent executed, and Miller & Co. could not set up any claim for damages by way of cross-demand or set-off except for latent defects or fraud; after an opportunity to examine and inspect the corn, they cannot set up any defects, but would be estopped by their inspection and acceptance followed by payment, except for latent defects. But if it was a patent defect, such as musty or blue-eyed on its face, and the defendants had an opportunity to examine it and after examination accepted and paid for it, then it is an executed contract, and you cannot find for Miller & Co. on their claim of set-off."

The motion was overruled, and defendants excepted.

FOSTER & LAMAR, for plaintiffs in error.

J. S. & W. T. DAVIDSON, *contra*.

BLECKLEY, Chief Justice.

1. The descriptive words by which the sale was made were, "No. 2 white mixed corn, bulk." These words comprehend quality as well as variety, and import a warranty on the part of the seller as to both. Corbin's note 24 to 2 Benj. Sales, 844; Gould *v.* Stein (Mass.), 22 N. E. Rep. 47; Whitaker *v.* McCormick, 6 Mo. App. 114; Wolcott *v.* Mount, 36 N. J. L. 268, s. c. 38 N. J. L. 496; Bridge *v.* Wayne, 1 Starkie N. P. 504. Nor will inspection by the buyer before acceptance deprive him of the protection of the warranty as to latent defects. Miller on Cond. Sales, 87, 94; Biddle on Warranty, §§111, 141; Meickley *v.* Parsons, 66 Iowa, 63, s. c. 55 Am. Rep. 261; Jones *v.* George, 61 Tex. 345, s. c. 48 Am. Rep. 280; Gould *v.* Stein, *supra.* Whether Hight *v.* Bacon, 126 Mass. 10, and Barnard *v.* Kellogg, 10 Wall. 383, are consistent with this rule, we need not inquire, since we are quite certain that the rule prevails in Georgia, however it may be in some other States. *Atkins* v. *Cobb*, 56 *Ga.* 86.

2. Three of the car-loads of corn inspected, accepted and paid for were, as the evidence pretty clearly shows, "false packed." Upon the surface the corn was sound and came up to the description, but beneath, beginning at a depth of some two feet, the corn was musty and "blue-eyed." The inspection actually made penetrated the mass a foot or more below the surface, and the defective corn was not discovered; and it does not appear that the inspection which ought to have been made was different from that which was in fact made. This being so, the musty and "blue-eyed" corn packed beneath that which was sound should be classed with reference to the whole car-load as a latent defect. The difference between patent and latent is that one is open to observation by ordinary inspection, and the other is not.

3. It was not competent to vary the general law of the State, raising a warranty in favor of the purchasers,

by showing a local usage in Augusta operating upon the corn trade to the effect that the acceptance of corn in bulk, and paying for it after inspection, were considered as waiving or releasing all claim upon the seller to answer for any defects of quality.    Doubtless the custom is binding upon those who have recognized it in their own transactions, and thus adopted it for their own dealings, but persons who have not done so are entitled to stand upon the general law.    Jones on Com. and Trade Contracts, §§122, 123; *Hatcher* v. *Comer*, 73 *Ga.* 418; Thompson v. Ashton, 14 John. 316; Barnard v. Kellogg, 10 Wall. 383 (*supra*); Yates v. Pim, 6 Taunt. 446.    A vigorous and learned opinion to the contrary was delivered in Snowden v. Warder, 3 Rawl. 101, in which case Chief Justice Gibson dissented.

4. A defect of quality in the three car-loads of corn did not, under the circumstances, entitle the purchasers to reject the ten car-loads subsequently tendered and found, upon inspection, to come up to the terms of the contract.    The whole purchase embraced thirty car-loads to be delivered in Augusta by instalments, and these ten were a part of the thirty.    Neither before nor after the defect was discovered in the three car-loads was there any intention on the part of the buyers or the sellers to abandon or rescind the contract.    On the contrary, even after the ten car-loads were rejected, both parties went forward in the performance of the contract, and its full performance on both sides seems to have been completed.    The right to rescind was neither claimed nor exercised as to any part of the contract.    The subject will be found discussed with more or less breadth in the following authorities :    Leake on Contracts, 654, 655 ; 2 Benj. on Sales, 787, note 26 ; Norrington v. Wright, 115 U. S., 188; 21 Am. L. Reg. 398 (notes) ; Cahen v. Platt, 69 N. Y. 348, s. c. 25 Am. Rep. 203 ; Notes to Gill v. Benjamin, 54 Am. Rep. 624; Blackburn v. Reilly, 47 N. J. Law, 290; Myer v. Wheeler

(Iowa), 21 N. W. Rep. 692; Mersey, etc. *v.* Naylor, L. R. 9 App. C. 434. And see *Ga. Refining Co.* v. *Augusta Oil Co.,* 74 *Ga.* 497. In the present case there was no fraud on the part of the sellers. The false packing was not their work, nor was it known to them. They had purchased the corn as they sold it, packed in the same cars.

5. With the law properly applied to the evidence in this case, as we understand it, the plaintiffs in error are entitled to recover for the breach of warranty their damages, properly measured, for the defect in quality of the damaged corn in the three cars which they accepted and paid for; and the defendants in error (the plaintiffs below) are entitled to recover their damages, properly measured, for the refusal of the purchasers to accept the ten cars of corn which ought to have been accepted, but were rejected without good cause. Whichever party has the largest claim on this basis should prevail when the case is tried again, unless the evidence should be materially different from that which is now in the record before us.

6. When the broker who sold the ten cars was under cross-examination, it was competent to ask him not only to disclose the amount of his commissions, but whether they had been paid or not. These commissions were sued for in the action which was on trial, and though they could be recovered if there was a real liability to pay them incurred by the plaintiffs below, the payment or non-payment might throw light upon whether that liability was absolute or dependent upon a recovery in this case. If the witness as broker had an interest in the recovery that would go to his credit. At all events, he was under cross-examination, and the right to sift is very broad. 1 Thomp. on Trials. §406 *et seq.*

The court erred in not granting a new trial.

*Judgment reversed.*