## FLORENCE v. PATTILLO.

1. It is not erroneous to overrule a demurrer attacking collectively two or more paragraphs of a defendant's answer, when it appears that in at least one of these paragraphs a good defense is set up.
2. The verdict in this case was not warranted by the evidence, and ought to have been set aside.

Argued April 25, 1898. — Decided March 4, 1899.

Complaint. Before Judge Hart. Greene superior court. September 1, 1897.

*J. B. Park Jr.,* for plaintiff.
*Samuel H. Sibley* and *Edward Young,* for defendant.

LUMPKIN, P. J. Three actions upon promissory notes were brought by Florence against Pattillo in the county court. In the superior court, to which they were carried by appeal, they were consolidated and tried together as one case. It appears from the record that the firm of Florence & Hiles sold to the defendant a newspaper known as the " Greensboro Herald-Journal," together with its outfit, at the price of $3,200; that he paid $2,000 in cash or its equivalent, and gave the notes sued on for the balance. These notes were subsequently assigned by the partnership to Florence. It further appears that in the negotiations which resulted in the purchase by Pattillo, one Knowles acted as the agent of Florence & Hiles, with full authority to represent them in the transaction. It seems that Pattillo filed in the county court an answer in each case, the material portions of each of which were as follows: " Par. 3. And for further plea in this behalf, defendant shows that the notes sued on are three of a series of twelve promissory notes, bearing the same date, given by him to the partnership of Florence & Hiles, of which petitioner was a member, as part of the purchase-price of the Herald-Journal, a newspaper property in the town of Greensboro. Said property was purchased at a price of thirty-two hundred dollars, of which amount two thousand dollars cash was paid, said notes of one hundred dollars each being given for the balance. At the time said notes were made and said contract of sale entered into, said property was, as is more fully set out hereinafter, represented to be worth, and ap-

37

peared to be worth, said amount, but has since proved to be worth not exceeding twelve hundred dollars. Defendant there-.fore shows that the consideration for the notes sued has wholly failed." " Par. 4. For further plea, defendant shows that in August, 1892, at the time of and previous to the making of said contract of sale and of said notes, and as an inducement thereto, that one W. A. Knowles, acting as the agent of said Florence & Hiles in the consummation of said sale, conducting all the nego-tiations, writing the said notes and receiving the delivery of them for the said Florence & Hiles, and since charged with the collection of the same, represented and warranted to defendant that said newspaper enjoyed an unparalleled patronage, both' from advertisers and subscribers; that it had a bona fide sub-·scription-list of fifteen hundred paying subscribers and an ad- ' vertising patronage amounting to more than five thousand dol-lars per annum; that said paper was popular everywhere and earning more than three thousand dollars net per annum; that the patrons of said paper were paying one hundred dollars per column per year for regular advertisements, and more for tran-sient advertisements—at least $150 to $200 per column per an-num,—and ten cents per line each insertion for what is known as reading or local notices. Said Knowles further represented and warranted that friends from the country were constantly bringing vegetables in season, fresh meats and other supplies, as presents to the paper, on account of their great love for it and desire to support it, and that he, Knowles, had lived almost en-tirely on these voluntary contributions of liberal and loving sub-scribers. Defendant shows that said representations and war-ranties were wholly false; that at said time the bona fide sub-scriptions of said paper did not exceed five hundred; that its advertising patronage did not exceed fifteen hundred dollars per annum; that the rates for advertising were only ——, that only from 3 to 5 cents per line was paid for local notices, and the majority were inserted for nothing; and the net earnings of the paper at that time and since have not exceeded one hundred dol-lars per annum. Defendant further shows that said Knowles, before said trade and as an inducement and warranty, exhibited a copy of said paper to defendant, in which were a great many.

advertisements which Knowles represented were live, paying advertisements, when in fact they were dead or were purely fictitious, no pay being received for them, and they were merely in said paper as decoy ducks and 'bait for suckers.' Defendant shows that said warranties as to the popularity and voluntary support of said paper were wholly false, and that said paper was wholly without local support and on the verge of ruin. Defendant shows that through the breach of said warranties said paper is not worth exceeding one third of what it was represented to be, and he pleads said breach, both in defense of the notes sued, and prays that he recoup against the plaintiff damages to the amount of five hundred dollars already paid said plaintiff, that being the limit of the jurisdiction of this court." "Par. 5. Defendant further shows that the above alleged representations were made by said Knowles to induce the purchase of said paper; that they were each and all false; that the said Knowles knew them r.. to be and intended to deceive defendant and lead him to the p. chase of said paper at the exorbitant price charged. Defendant, however, was ignorant of their falsity, and relying upon the integrity and honesty of said Knowles, believed them to be true and made said purchase upon the faith thereof. So soon as defendant discovered said falsity, he notified said Knowles and Florence, before the notes became due, that he would not pay them. Defendant therefore shows that said notes are the outgrowth of a fraud upon him and not binding upon him. And he further prays that he recover of said plaintiff five hundred dollars of the money already paid, said paper at said time being worth not exceeding five hundred dollars, and the jurisdiction of this court not allowing the recovery of more."

To the defenses thus set up the plaintiff demurred as follows: "And the plaintiff in said case files the following demurr·· ·· to the pleas in said case and moves to strike the pleas in s··id case on the following grounds, to wit: 1st. Plaintiff moves t· strike the entire pleas, for the reason that they do not set up any ·· ·-·nse to the notes sued on under the facts alleged therein. Def·· ··ant does not allege that upon the disanana of the facts cons ··ing the fraud that he announced his purpose to rescind, adhered to it,

made or offered to make restitution; neither does he allege that he did not examine the property before buying. 2d. Plaintiff moves to strike paragraphs 4 and 5 of defendant's pleas, for the reasons that they do not set forth any valid defense to the notes sued on, there being no allegations in such pleas that upon the discovery of the fraud he elected to rescind, and no allegations that he then restored or offered to restore the seller to his original status." The court passed an order which reads as follows: "Upon hearing argument on this demurrer, it is ordered. by the court that the demurrer on the first ground be overruled. Ordered further that the demurrer on the 2d ground be overruled, except that the allegations in reference to the voluntary contributions to the Herald-Journal by friends and the claim for recoupment be stricken, and the remainder of paragraphs. 4 and 5 be allowed to stand."

After the order last mentioned had been entered, the defendant filed an amendment to his answer with a view to amplifying the. allegations therein as to the representations made by Knowles,. which amendment was allowed without objection. There was. a verdict for the defendant, and the plaintiff moved for a new trial, which was denied. He complains here of alleged error in. overruling his demurrer to the defendant's answer and in refusing to grant a new trial. The motion contained numerous. grounds. Some of them are sufficiently disposed of by what is. now ruled, and none of them, save those alleging that the verdict is contrary to the law and the evidence, are of enough importance to require special notice.

1. As will have been observed, the first ground of the plaintiff's demurrer was directed against the defendant's answer as a whole, alleging generally that the facts therein set up constituted no valid defense, and specially attacking the same for the reason. that the defendant failed to allege he had taken the proper steps. to rescind the contract upon discovery of the fraud perpetrated upon him. It follows that if in any of the several paragraphs of the defendant's answer a good defense was set up, this ground of the demurrer was properly overruled, for the entire answer could not properly be stricken unless as a whole it was fatally defective in the respects indicated. Certainly there was no merit

in either of the objections urged, so far, at least, as the fourth
paragraph was concerned.　Properly analyzed, this was a plea
alleging that the defendant had purchased the newspaper under
an express warranty as to particulars materially affecting its
value.　In other words, it was a warranty as to quality, and the
defendant had a right to rely upon it in defense to the action.
Under the terms of this warranty it was his right to receive ex-
actly such a newspaper as he contracted for; and if the one de-
livered to him did not come up to the terms of the warranty, he
was entitled to recoup the damages sustained by its breach, and
thus practically secure a diminution of the price corresponding
in amount with the difference between the actual market value
of the property and what would have been its value if the circu-
lation of the newspaper, its advertising patronage, etc., had been
as warranted.　The amount of damages sustained by one who
purchases property sold under a warranty as to quality, and
which does not come up to the warranty, is "equal, at least, to
the difference between the agreed price and actual value as re-
duced by defective quality."　*Atkins* v. *Cobb,* 56 *Ga.* 86.
The right of a defendant to plead a breach of a warranty cer-
tainly is not dependent upon whether he did or did not promptly
offer to rescind the contract upon discovering that he had been
overreached in the transaction, when there has been in fact no
rescission, and the plaintiff is seeking an enforcement of the con-
tract against the defendant.

What is said above applies with equal force to the second
ground of the plaintiff's demurrer, which attacked so much of
the answer as was contained in paragraphs 4 and 5, and averred
that the same was bad because the defendant did not therein al-
lege any effort on his part to rescind the contract and "restore
the seller to his original status."　In the argument here, counsel
for the plaintiff in error treated this ground of the demurrer as
though it was specially directed against the fifth paragraph, and
contended that it was not competent, in defense to an action aris-
ing ex contractu, to plead as a set-off damages sustained by
reason of a fraud practiced upon the defendant to induce him to
enter into the contract.　We can not, however, undertake to deal
with the point thus sought to be raised.　In the first place, had

the plaintiff desired to invoke a special ruling upon the merits of this particular defense, he should have demurred thereto separately upon the ground just indicated. But even if the demurrer actually filed be treated as if directed solely to the fifth paragraph of the defendant's answer, the question argued by counsel is not properly presented, for the only reason assigned why this item of set-off could not be pleaded was that the defendant did not allege an offer to rescind as soon as he discovered he had been defrauded. Such an allegation was totally unnecessary in this connection; for the defendant was not attempting to defend on the ground that the notes sued on were void because of fraud, but, treating the contract as binding upon him for the reason that he had not in time elected to rescind, was simply endeavoring to recover the damages he had sustained because of the deceit practiced upon him. The question whether he could, or could not, lawfully do this is not made by the demurrer. Dealing with the demurrer as it stands, we hold without difficulty that for no reason therein stated did the court below err in declining to strike the fourth and fifth paragraphs of the defendant's answer, whether considered together or taken singly and subjected to the test suggested for determining their sufficiency.

2. We feel constrained, however, to reverse the judgment refusing to grant a new trial, because, in our opinion, the verdict was not supported by the proof submitted in behalf of the defendant. After a most thorough and careful study of the brief of evidence, we are convinced that he entirely failed to establish his plea setting up a warranty. Taking the testimony most favorable to him, it simply appeared that Knowles, as the agent of the sellers, had made to Pattillo a number of representations as to the circulation and advertising patronage of the paper at a time long preceding that at which the sale to Pattillo was effected. Knowles had not been connected with the management of the paper for more than a year prior thereto. What he said to Pattillo necessarily referred to the time when he (Knowles) was conducting the paper, for he did not profess to know definitely the status of the business after that time. In other words, it seems that he undertook merely to present the argument that, as he had made a success of the enterprise when under

his management, the paper would prove a paying investment to a competent man desiring to purchase it.   Every person of even ordinary observation, whether experienced in the newspaper business or not, must know that such an argument is not to be accepted without question, for great changes in the business of a newspaper may occur in a much less period than twelve months, and what might once have been a profitable investment would not necessarily prove a good one months later.   It is true that some of the expressions used by Knowles were indefinite as to time, and under other circumstances might have been understood as referring to the condition of the paper and the extent of the business being done at the time of the sale; but taking the testimony as a whole, it is evident that Knowles's real knowledge of its situation was confined to a period at least a year prior to August, 1892, and he was not in a position to make any definite statement as to the status of the business at or about that time.   As to Knowles's opportunities for knowing the condition of the paper after he severed all connection therewith, Pattillo was fully informed; so even if the former did in fact undertake to make any representations as to the circulation of the paper, its advertising patronage, etc., at the time of the sale, Pattillo could not have failed to understand that what was said was mere speculation or guesswork, not intended as a warranty. Indeed Knowles told Pattillo that the paper had " run down " considerably since he had ceased to manage it, and undertook merely to assure Pattillo that a man of his ability could bring it up again to a prosperous basis.   It follows that the jury were not warranted in finding that the representations made by Knowles amounted to a warranty respecting the condition of the paper and the profits realized therefrom in August, 1892, much less a warranty that under Pattillo's management the paper would continue to prove a profitable enterprise.   So much, therefore, of the defense as related to the alleged breach of warranty completely fell to the ground.   Even if the alleged fraud perpetrated by Knowles can be treated as legitimate matter of defense, the proof also failed in this respect.   Exaggerated statements by Knowles of what the paper was doing after he ceased to manage it amounted to nothing more than stating a

bare opinion, as he did not profess to have any definite knowledge upon the subject; and even if he made these statements recklessly and in bad faith, Pattillo can not claim to have been thereby misled and deceived, for under the circumstances he was not justified in acting thereon. As to representations made by Knowles concerning the success of the enterprise while he was conducting it in person, these related to the past and were employed in merely " puffing " the advantages of the property in connection with the expression of a belief on his part that what he had done, a man of Pattillo's talents and experience could likewise do if he purchased the paper. Knowles's prediction in this respect did not come to pass; but it does not follow that Pattillo has, in a legal sense, been defrauded.

*Judgment reversed. All the Justices concurring, except Lewis, J., disqualified.*