BYRD v. CAMPBELL PRINTING PRESS & MANUFACTURING CO.

1. The plaintiff having made to the defendant a written offer to sell him a machine under full guarantee in certain designated respects, but in no others, and at a named price to be paid in specified installments, the writing providing that defendant might take the machine on three months' trial before deciding whether or not he would accept it; and he, before the expiration of that time, having thoroughly tested the machine and pointed out to plaintiff's agent its failure, in consequence of various defects he had discovered, to come up to the proposed guarantee, and having therefore declined to purchase it on the terms proposed, but having afterwards, with a full knowledge of the machine and its defects, purchased it at the same price, without express warranty, upon a proposition made by himself and on terms in some respects more favorable to himself, giving his promissory notes in settlement, it is not a valid defence to an action thereon that there was a breach of the guarantee in the original offer to sell; or that in consequence thereof the consideration of the notes failed, totally or partially; or that the machine was not merchantable and reasonably suited to the use intended.

2. There was no error in rejecting amendments offered to pleas of defendant previously filed, the amendments referring vaguely to "improvements and attachments" which plaintiff was to put upon a machine, without describing them; to a letter of given date, without setting it out or stating a sufficiency of its contents to inform the court of its purport and meaning, from which letter, as alleged, a certain stipulation, the terms thereof not being stated, had been omitted by the mutual mistake of defendant and plaintiff's agent. These amendments, for the reasons above indicated, were too indefinite and uncertain, and could not be aided

by reference to the evidence introduced before they were offered, or to evidence rejected by the court.

3. There was no error in rejecting evidence tending only to prove allegations contained in amendments to defendant's pleas which had not been allowed, or to establish the defences of breach of warranty and failure of consideration, which, under the undisputed facts of this case, could not avail the defendant; and the court did not err in directing a verdict for plaintiff, or in refusing a new trial.

November 9, 1892.

Contract of sale. Warranty. Amendment. Evidence. Before Judge VAN EPPS. City court of Atlanta. December term, 1891.

The following statement, prepared by Justice LUMPKIN, contains all the facts necessary to an understanding of the rulings made in this case :

On June 12th, 1889, Chas. P. Byrd entered into a written contract with the Campbell Printing Press & Manufacturing Company, touching the purchase of a printing press, at the price of two thousand dollars, payable in certain monthly installments, with interest on deferred payments, the contract stipulating that the press was "to be put in on three months trial," the purchaser to have the privilege of rejecting same at any time before the expiration of that period if found to be unsatisfactory, the Campbell company making "full guarantee as to register, workmanship, etc.," and representing the press to be a "No. 1 machine;" "equal in every respect to the Campbell two-revolution, four-roller book and job press," and to "do first-class book and job work." This contract also expressly stated it was to be the entire agreement between the parties, and that "all representations and guarantees unless reduced to writing and inserted herein are void." Finding, after trial, that the press was entirely unsatisfactory, Mr. Byrd pointed out to the company's local agent the defects to which he objected, and within the time named in the contract declined to accept the press, and notified

the agent to take it out. This contract was, therefore, never completed or carried out. It appears from certain letters offered in evidence on the trial, but rejected by the court (and which are mentioned simply for the purpose of giving a full history of the transaction), that the Campbell company then sought to make some arrangement by which Byrd should keep the press; and, after considerable correspondence, directed their local agent to confer with him and endeavor to arrive at an adjustment of the matter. The result of this conference was that the agent induced Byrd to submit to his company a proposition in writing, the same being a letter which was introduced in evidence, stating the terms upon which he would purchase the press, the agent not knowing the proposition would be accepted. After referring to objections which had theretofore been urged against the press, and explaining that he had really no need for the same, the writer proceeded to state in his proposition that, nevertheless, he would accept the press at two thousand dollars upon certain terms of long-deferred payments without interest, making no allusion, however, to any guarantee he might expect from the company regarding the press, nor providing any other stipulations whatsoever. In closing his letter he said: "If you see fit to accept this proposition, you may forward your papers for closing the trade." This proposition was formally accepted by the Campbell company, and in accordance with the terms thereof, Byrd, after some delay, executed and delivered to the company's agent certain promissory notes covering the amount of the purchase 'price. One of these notes, for $666.66, unconditional on its face and reciting "value received," is that sued on in the present action.

In defence to this suit, Byrd filed a plea reciting the guarantee concerning the press which was to have been made by the Campbell company in the original con-

tract above alluded to ; alleging that the press not only wholly failed to come up to the warranty given, but was not merchantable nor reasonably suited to the use intended, and praying that the trade be therefore rescinded, etc.   By amendment he pleaded not indebted, and total failure of consideration by reason of the breach of warranties express and implied, above mentioned.   He sought further, by amendments, to introduce into his defence the following :   That upon his refusal, after trial, to accept the press, the Campbell company offered and agreed to add certain attachments and make certain improvements which, they assured him, would meet and overcome all objections he had urged against the machine.   When the local agent of the company called on him to see what arrangement could be made looking to an adjustment of the matter, he was notified by the agent that his principal had instructed him to say that said improvements would be made, and to make settlement on that basis.   The matter was then discussed in detail, and upon the express condition that the improvements would be made, defendant told the agent what he was willing to do.   The agent thereupon asked defendant to submit his proposition in writing to the Campbell company, saying, however, he could not tell what his principal would do.   Accordingly, defendant's letter to the Campbell company of December 14, 1889, it being the letter in evidence above referred to, was written in the presence of the agent and read over to him ; but though it was the mutual intention of defendant and the agent that said stipulation should be stated in the letter and form the basis of adjustment, by mistake and oversight of both of them, this stipulation was entirely omitted from the letter. The Campbell company fully understood defendant's proposition was based upon the agreement already arrived at between them, that the improvements were to

v 90-35

be made; and this stipulation was repeated by the agent at the time the note sued on was delivered to him, and held out as an inducement to deliver it, etc., etc. The amendments to his pleas, which defendant offered, reciting, in substance, the facts just stated, were rejected by the court; and proof offered in support of the allegations therein contained, was also rejected. These rulings of the court were assigned as erroneous, and the refusal of the court to admit the evidence just referred to was further complained of on the ground that the same was relevant and proper in support of the pleas of breaches of warranty and failure of consideration.

DANIEL W. ROUNTREE, for plaintiff in error.

ABBOTT & SMITH, *contra.*

LUMPKIN, Justice.

The writer has prepared and handed to the reporter a statement of the facts of this case.

1. It is perfectly clear from the evidence that Byrd distinctly declined to purchase the press upon the terms originally offered him in writing by the company, and there is no evidence to show that he purchased it under any express warranty at all. On the contrary, his own letter containing a proposition to purchase stipulated for no warranty of any kind. It is true he sought, by amendments, to set up that this letter, by reason of a mutual mistake of himself and the company's agent, did not contain the proposition he really intended to make, and that this was well known to both the agent and the company; but these amendments were not allowed by the court, and its refusal to allow them will be hereinafter discussed. Taking the case as it stands, there was no express warranty, and of course there could be no breach of one or any failure of consideration, total or partial, in consequence of such alleged

breach.  This much of the defence, therefore, falls to
the ground.

The next inquiry is, could Byrd defend on the ground
that there was a breach of the warranty implied by the
law that the article was merchantable and reasonably
suited to the use intended?  We do not think, in view
of the facts of this case, that he can be protected under
the provisions of section 2651 of the code relating to
implied warranty.  That section declares "the purchaser
must exercise caution in detecting defects," and the
seller will not be held to have warranted the article to
be merchantable and reasonably suited to the use in-
tended, when, from the nature of the transaction, such
warranty is excepted.  This is plainly and manifestly
such a case.  After declining to purchase under an
agreement containing an express warranty limiting the
seller's liability to the terms thereof and excluding any
other guarantee, Byrd purchased the press on terms pro-
posed by himself after he had tried it, found out all
about it, and detected, as he testifies, numerous defects
in it.  He does state that he discovered some defects
after he had given the notes, of which he did not know
before; but there can be no doubt that he had the full-
est and most ample opportunities to test, examine and
thoroughly acquaint himself with this machine, and
that he availed himself of them to his entire satisfac-
tion.  Taking his evidence as a whole, the only fair
and reasonable conclusion from it on this subject is, that
he had full and complete knowledge of the press and
all its defects of any consequence before he gave his
notes for its purchase, and the very terms on which he
offered to buy it, and did buy it, show most clearly that
he sought and obtained material advantages because of
the defects of which he complained.  These defects
were, so far as he is concerned, patent; and buying with
a knowledge of them, he has no right to invoke the

law of implied warranty. A man has a right to purchase an imperfect or defective article, if he chooses, and so doing is an every-day occurrence; but when one does this with his eyes open, and no fraud has been practiced upon him, he cannot be heard to say the law required the seller to warrant against the very defects of which he (the purchaser) was fully aware, especially when, because of them, he secures a better bargain than he would otherwise have obtained.

The case of *Cochran* v. *Jones*, 85 *Ga.* 678, is entirely different from the present one. The machine sold in that case had certain patent defects which the seller pointed out, representing that when they were repaired, the machine would do good work. The purchaser gave his notes before trying the machine or having an opportunity to do so, repaired it as directed, and then found it would not satisfactorily perform the work for which it was designed, because of latent defects which had not been disclosed to him and which he could not have discovered by the exercise of ordinary diligence. This court simply held that from the nature of the transaction, the law did not raise against the seller an implied warranty that the machine in the condition it was when sold was merchantable and reasonably suited to the use intended, but did raise such a warranty that it would become so when the repairs were made. The ruling, therefore, really supports that made in the present case, to the effect that the doctrine of implied warranty will not protect a purchaser as to patent defects, or defects of which he has full knowledge; and this, we apprehend, is well-settled law.

2. If Byrd had any meritorious defence at all in this case, it was that which he undertook to set up in the amendments to his pleas which the court refused to allow. If the evidence admitted, that rejected, and the offered amendments are all considered together, the

amendments are intelligible; but if the latter are considered in connection with the pleadings alone, and without reference to the evidence, it would be impossible to understand their meaning. The defects in them have been sufficiently indicated in the head-note. In passing upon the sufficiency of a plea, a court has no authority to look beyond it into the evidence, or elsewhere, for light, but must determine whether or not upon its face it sets forth a legal defence. The amendments under consideration were certainly lacking in both clearness and certainty, not only as to details, but as to substance, and for this reason the trial judge might have rejected them. He rejected them because, in his opinion, taking them as expressing all he understood them as intending to express, they did not present a legal defence. Upon the correctness of this conclusion we are not at liberty to pass, because it is not permissible, as already observed, to consult the evidence, whether admitted or rejected, for the purpose of testing the sufficiency of a plea. It must stand or fall upon its own allegations without extrinsic aid of any kind.

3. The motion for a new trial complains of various rulings of the court in rejecting evidence. In so far as this evidence tended to support the allegations in the pleas which were not allowed, the court was manifestly right in rejecting it. In so far as it tended to establish the other pleas, the refusal to admit it was not error, because, as we have shown, none of the defences made were, under the undisputed facts of this case, good in law. A verdict for the plaintiff for the full amount of the note sued on was the only legal result from the pleadings and evidence as they stood. Consequently, there was no error in so directing, and of course, none in refusing to grant a new trial.     *Judgment affirmed.*