BYRD *v.* CAMPBELL PRINTING-PRESS & MANUFACTURING CO.    | 94  41 |
                                                          | 96  561 |

If the terms of a contemplated sale be orally agreed upon by the buyer and the agent of the seller, with the understanding that the former is to reduce the same to writing and transmit the writing to the seller for his acceptance or rejection, and certain vitally

material stipulations favorable to the buyer are by mistake omitted from the writing, and with knowledge of this omission the seller accepts the buyer's proposal, and thereupon the latter (both parties fully understanding the terms of the sale to be the terms orally agreed upon) executes and delivers his promissory notes for the price, and afterwards, by reason of the failure of the seller to comply with the stipulations omitted from the writing, the consideration of the notes so fails or partially fails that in equity the buyer would be entitled either to a rescission or to a material abatement in the price, these facts may be set up as a defence (complete or partial) to an action on the notes, the defendant in his plea alleging, not only that the seller accepted the written proposal with knowledge of the oral stipulations and of their omission by mistake from the writing, but that he has admitted in writing that this was true, and the plea not being demurred to specially on the ground that the writing to prove this admission was not set forth either by description or by copy of the same.

June 18, 1894.   Argued at the last term

Complaint on note. ' Before Judge VAN EPPS.   City court of Atlanta.   March term, 1893.

DANIEL W. ROUNTREE, for plaintiff in error.
B. F. & C. A. ABBOTT, *contra.*

LUMPKIN, Justice.

The Campbell Printing-Press and Manufacturing Company sold and delivered to Charles P. Byrd a printing-press, the latter giving his promissory notes for the purchase price of the same. An action was brought by the Campbell Company upon one of these notes, which, notwithstanding the defences set up and attempted to be set up by the defendant, resulted in a verdict and judgment in favor of the plaintiff. That case is reported in 90 *Ga.* 542. Afterwards the Campbell Company brought a second action against Byrd upon another of the notes above mentioned. To this action the defendant filed a special plea, to which the plaintiff demurred. Pending argument on the demurrer, the defendant offered an amendment to this plea, which the court refused to allow, and then passed an order sustaining the demurrer and striking the defendant's special plea.

There was a verdict for the plaintiff for the full amount
of the note, and the defendant brings the case to this
court for review, assigning as error the refusal of the
court to allow the amendment offered to his special plea,
and the striking of that plea on demurrer.   The ques-
tions dealt with in the present case were not passed
upon or decided in the former case between these parties.

In order to set forth clearly the questions involved
in the controversy now presented for adjudication, we
will state at some length the substance of the special
plea and of the amendment which the defendant de-
sired to make to the same.   Although, in pursuing this
course, there may be, to a considerable extent, a repe-
tition of the facts contained in the statement and opinion
reported in 90 *Ga.*, *supra*, this seems, nevertheless, the
better method of dealing with this somewhat compli-
cated case.

As to the facts connected with the sale of the press
to Byrd and the negotiations leading up thereto, the
defendant's special plea furnishes the following history:
In June, 1889, Byrd entered into a written contract with
the Campbell Company touching the purchase by him
of a printing press, by the terms of which contract he
was to have three months trial of the press, with the
right to reject the same if it failed to come up to certain
express warranties as to workmanship, suitability, etc.,
etc.   After a trial of the press, it was found, for a num-
ber of reasons, to be entirely unsatisfactory; and accord-
ingly, Byrd, within the time stipulated in the contract,
exercised his option to reject the press, and notified the
resident agent of the Campbell Company to take the
press out of his office.   The Campbell Company recog-
nized the existence of the defects in the press pointed
out by Byrd, and the trade was declared off.

Subsequently, the company wrote Byrd that it was
"making some radical changes which would make the

bed of said press as accessible in front of the cylinder as it is on any back-delivery two-revolution press," and asked to be permitted to make these changes on the press then in Byrd's office. Under orders from his company to try every means possible to induce Byrd to keep the press, the agent called upon Byrd and prevailed upon him to allow the press to remain in his office, free of charge, pending negotiations for a trade upon the basis of remedying all defects, which the agent assured Byrd could be done by making certain alterations and improvements, and exhibited a letter from the company to that effect. Some time elapsing, and no steps having been made by the company to perfect the press as proposed, Byrd again requested the agent to remove the same, stating he had recently purchased another of a different kind, and had no need of an additional press. The agent, however, in accordance with instructions from his principal, " persisted in trying to make a trade, and insisted that Byrd should make him a proposition to buy said press, upon the express condition that such alterations and improvements would be made on it as would remedy all the defects on account of which it had been rejected, and would bring it up to the standard fixed in the original contract." Byrd thereupon told the agent he would not buy the press at any price in the condition in which it then was; but after much importunity, proposed to the agent to buy it upon certain terms, upon the express condition that all defects would be remedied as aforesaid. At the request of the agent to reduce this offer to writing, Byrd wrote the following letter, which he read over to the agent, and then delivered the same to him to be forwarded to the Campbell Company:

"ATLANTA, GA., Dec. 14th, 1889.

" Campbell P. P. & Mfg. Co., New York.

" Gentlemen : In reference to the Oscillator press, I have only to urge the objections with which you are al-

ready familiar.   For long runs ·it is a good press, but
for the ordinary run of book and job work it is alto-
gether too unhandy.   That I am honest in this position
is evidenced by the fact that I took the Pony press in
its stead.   The trade for the Pony press has been con-
summated; the press is satisfactory, and I have no de-
sire to make any change so far as it is concerned.   With
the Whitlock, the two-revolution Campbell and the
Pony, I can do all the work at my command, and I do
not need any other press.   It was with the understand-
ing that the Oscillator was rejected that the Pony was
put in, as I had no intention of keeping the Oscillator
when the Pony was ordered.   In this assertion your
Mr. Fiske and Mr. Seitzinger will bear me out.   I am
very much crowded, and have no room for the number
of machines now in my office.

"Now, with the above facts before you, I make you
the following proposition, which is the very best I can
do, and which shall be final: I will give you my notes
for $2,000.00, payable one third in 12 months, one third
in 24 months, and one third in 36 months, without in-
terest, dated January 1st, 1890.   I make the time long
because I have about as much to pay in the meantime
as I care to ; and I make it without interest because I
cannot afford to pay interest on a comparatively idle
press.   Of course, I understand that there is an object
in having an extra press, but I consider I am paying
well for such an object when I pay $2,000.00 for it.

"I am careful to give my notes in such a way as to
be absolutely certain of meeting them. I might give you
notes for a shorter time, and disappoint you and mortify
myself by being unable to pay them, but I do not pro-
pose to do this; so far, my record is clear of such trans-
actions, and I propose to so conduct my affairs as to
maintain this record.

"If you see fit to accept the proposition, you may for-
ward your papers for closing the trade.

"Awaiting your reply, I remain, very truly,
                              (Signed)    Chas. P. Byrd."

As to the circumstances connected with the writing
of this letter, Byrd in his plea explains that it was writ-
ten at night, after closing time, when both he and the

company's agent were anxious to go home; and while it was the mutual intention of both to incorporate in the letter Byrd's true offer, as above set forth; yet, by the inadvertence, oversight and mistake of both of them, the letter failed to contain any mention of the express stipulation that said offer was made upon the condition that the defects in the press should be remedied as proposed. Under these circumstances, Byrd insists that the writing of the letter was, in effect, the work of both himself and the agent; and charges, moreover, that the mistake thus caused by their inadvertence and oversight was well known to the Campbell Company when it received this letter, and that the company answered the letter and accepted said offer with full knowledge that said condition or stipulation was a part and parcel of the proposition submitted by Byrd. It is further alleged in the defendant's plea that when the notes mentioned in his letter were presented to Byrd to be signed, he declined to do so until the contract was fully understood by both parties thereto to be as above indicated, and which defendant insists was the real contract of purchase. Subsequently, the Campbell Company admitted in writing that said condition was a part of the contract of purchase, and undertook to have the necessary alterations, additions and improvements made upon the press in accordance with its contract; but its efforts utterly failed, and the same defects existed after such efforts as before; and Byrd, after a full trial of the press as thus changed and added to, finding it not improved but almost worthless, again rejected it on account of said defects, and so notified the Campbell Company, which, however, declined to accept it. After the failure of the company to perfect the press, Byrd knew of no way to remedy its defects, and it is now, as it has always been, practically worthless. It has been used, in consequence, very little, but has been carefully

kept and is in good condition. Byrd has hitherto frequently offered to return it to the company and pay liberally for its use, and is still willing and offers to do so.

Upon the maturing of the first note given by Byrd, the Campbell Company instituted suit upon the same. To this action Byrd filed a plea of failure of consideration, but the court held this plea to be bad, for the reason that it did not upon its face set forth a legal defence, being lacking in both clearness and certainty, not only as to details but as to substance, and was otherwise defective. Judgment was accordingly rendered against the defendant for the full amount of the note, which judgment Byrd has since paid in full.

To amplify the allegations of his plea in regard to the subsequent recognition by the Campbell Company of his mistake in omitting from his letter a substantial feature of the proposition he really intended to make, Byrd further offered at the trial the amendment mentioned in the beginning of this opinion, alleging that he " absolutely refused to sign said notes until said agent, in accordance with the specific written instructions of said plaintiff, agreed and undertook to make said improvements and alterations, and thus correct all defects, upon the faith of which agreement and undertaking the notes were signed and delivered to said agent."

Passing by as immaterial everything which had occurred up to the time when the agent of the Campbell Company succeeded in inducing Byrd to submit to the company a written proposition stating the terms upon which he (Byrd) would be willing to purchase the press, we think the latter was entitled to plead and prove that by mistake or inadvertence he omitted from his written proposition the vitally material stipulations and conditions favorable to himself specified in the plea, and the fact that this omission was known to the Campbell Com-

pany when it accepted his proposition to purchase. We are also of the opinion that it was the right of Byrd to plead and prove that both parties fully understood the terms of the sale to be those agreed upon orally between Byrd and the company's agent at the time the written proposal was made, and that the notes given by Byrd for the price of the press were executed and delivered with this understanding on the parts not only of Byrd and the company's agent, but also on the part of the company itself; the plea also alleging that the Campbell Company had admitted in writing its acceptance of Byrd's written proposal with knowledge of the oral stipulations referred to and of their omission, by mistake, from the writing. In this connection it is well to bear in mind that there was no special demurrer to the plea on the ground that the writing to prove this admission was not set forth either by description or by copy of the same.

If Byrd was entitled to plead as above indicated, it would follow, of course, that he had the right to plead further the failure of the Campbell Company to comply with the stipulations omitted from the writing, and that in consequence of such failure, the consideration of the notes failed, either totally or partially; and if, under these pleadings, he can establish by evidence a total failure of consideration, he will be entitled to a general verdict in his favor; if he establishes only a partial failure of consideration, he will be entitled to have a deduction from the note now sued on, in accordance with the facts. · The amendment which the court rejected was merely an amplification of the allegations contained in the special plea, and this constitutes a sufficient reason why it should have been allowed.

Taking a comprehensive. view of all the allegations contained in the plea and the amendment considered together, they are not necessarily inconsistent with

Byrd's written contracts, as evidenced by his letter of December 14, 1889, to the Campbell Company; its acceptance of the terms proposed in the letter, and his promissory notes executed and delivered in pursuance thereof. On the contrary, Byrd is simply seeking an enforcement of the contract he actually made, a vital part of which was, in consequence of a mistake which was well known both to the Campbell Company and its agent, omitted from the letter. The recognition of the existence of this mistake can be shown, if the plea speaks the truth, by the company's written acknowledgment. This acknowledgment, if in fact made, will show that the oral contract made by the company, and in consideration of which Byrd gave his notes, was not only the sale and delivery of the press, but also the making of certain alterations and improvements which would remedy its defects and cause it to do satisfactory work. The company's written acknowledgment, as described in the plea, would be competent and sufficient evidence against the company to show what the contract really was. See *Foster et al.* v. *Leeper & Menafee*, 29 *Ga.* 294, cited approvingly in *Georgia Refining Company* v. *Augusta Oil Company*, 74 *Ga.* 508. See, also, *Marietta Savings Bank* v. *Janes*, 66 *Ga.* 286, holding that where a promissory note did not itself express the entire contract between the parties, but the remainder was contained in a letter written by one of them in connection with the making of the note, such letter was admissible in evidence in a suit against the maker by one who took the note after its maturity.

If all the statements in the plea are true, it would be grossly unjust to cut off entirely Byrd's defence and allow the company to recover upon the notes just as they stand. If the plaintiff accepted his written offer of purchase knowing of the omission, and afterwards accepted his notes fully understanding they were given

v 94-4

by Byrd upon the basis of his letter as it would be with the omitted stipulations in it; and if afterwards the company admitted in writing these things to be true, it cannot in good conscience claim that its entire contract with Byrd is evidenced only by the notes and the literal import of the letter. To sustain such a claim on its part would be to allow the company to perpetrate and consummate a gross fraud upon Byrd, which, under the facts as alleged by him, is neither lawful nor allowable.

We do not, of course, know what Byrd will be able to prove; but for the purpose of dealing with the demurrer, the allegations of his plea are to be taken as true. So regarding them, he has a right to go before the jury, show the written acknowledgment of the plaintiff mentioned in his plea, and, by proving the other facts alleged, establish his defence, either complete or partial, as may appear when the evidence all comes out.

*Judgment reversed.*