### 12214. PUFFER MANUFACTURING COMPANY *v.* RYCKELEY.

Waiver of the defects in the soda-fountain bought by the defendant was shown by the evidence, from which it appeared that after he had discovered its defective condition he executed and delivered to the seller promissory notes for the property and that he paid some of them. The evidence demanded a verdict for the plaintiff. BLOODWORTH, J., dissents.

DECIDED DECEMBER 13, 1921.

Certiorari; from Muscogee superior court — Judge Munro. January 8, 1921.

A second-hand soda-fountain at the store of the Solomon company, Columbus, Georgia (so described in the written order of the purchaser), was bought by Ryckeley from the Puffer Manufacturing Company in August, and his installment notes and a mortgage on the fountain, for purchase-money, were signed and delivered to the seller in the following November. He paid several of the notes at maturity, but refused to pay the others; the mortgage was foreclosed, and he filed an affidavit of illegality, setting up that the mortgage was without consideration and void, for the reason that the soda-fountain was of no value for the purpose for which it was purchased; and he prayed for judgment in his favor for the amount paid by him on the purchase price. The trial of the case in the municipal court of Columbus resulted in a verdict and judgment in his favor for that amount. The plaintiff's motion for a new trial was overruled by the judge of the municipal court, and on certiorari the judgment was sustained by the judge of the superior court.

On the trial the defendant testified as follows: " Some time during the month of August, 1918, Mr. George T. Smith, a sales agent for the Puffer Manufacturing Company, approached me for the purpose of making a sale of certain second-hand soda-water fixtures then located in a store . . known as Ash Solomon's. Mr. Smith and I . . looked at the soda-water fixtures, which were then in operation and which were being used by the Solomon Company for dispensing soft drinks. I learned from Mr. Smith that the Solomon Company had used these fixtures for several years and that the Solomon Company had bought a new soda-fount, which was to be delivered in several months. Mr. Smith offered to sell me the second-hand soda-

fount, which, as I understood, the Puffer Manufacturing Company had taken off the hands of the Solomon Company in consideration of that company buying a new fount. I looked over the soda-water fount and fixtures, and I agreed to take the same for the sum of $450. I paid Mr. Smith $25 to bind the trade, and signed an order for these fixtures. At the time I bought the soda-fount, it is true, I went to Solomon's place and looked the soda-fount over, but had no opportunity to examine it except casually at the time, as it was in operation. I signed the purchase contract and paid the $25 in August. I thought the soda-fount was all right. Later on, some time in November, 1918, Mr. Smith, representing the Puffer Manufacturing Company, had the fount moved to my place on Broad street, and then it was some two months or more before I could have it installed. In the meantime I was trying to meet my obligations by making the payments I had agreed to make on the purchase-price of the fount. As soon as I found out the fount was worthless I refused to make any other payment until it was put right, and I took it up with the company. They refused to repair it and I refused to pay any more on it. After I got the fount connected up and turned on pressure the whole inside workings of the fount leaked, and were rotten, decayed, full of holes, would not hold water, and the fount was of no value, and the only way it could be repaired was by buying a new soda-fount. The defects in said fount could not be seen by ordinary observation, by looking it over; the inside workings of the soda-fount were full of holes, decayed and rotten. I have never had any experience with a soda-fount except this one. I did not know anything about a soda-fount at the time I bought this one. I thought the soda-fount was all right until I tried it out and found it to be worthless, the defects being concealed. . . No way I could have examined and found the defects . . except to take the soda-fount to pieces, . . The soda-fountain could not be repaired. It would take a new outfit except the hull of it before soda-water could be dispensed.

"About the first of November . . I went around to the Solomon Company and observed them while the second-hand soda-fount was being moved out. I noticed that the floor where the second-hand soda-fount had been was wet and rotten, which

to my mind indicated that the soda-fount was leaking. The Puffer Manufacturing Company had this soda-fount installed for me in my place of business, on Broad street. I then paid the Puffer Manufacturing Company $65 cash and executed notes . . for the balance of the purchase price. Shortly after the fixtures were installed I noticed considerable rust in some of the containers and on some of the rods and ducts. I made complaint of this rust to the agency of the Puffer people. The soda-fount showed leaks and I was unable to use the same, as the pipes had holes in them caused by rusting. The insides were full of leaks, and it was not fit for the purposes for which it was bought. I notified the Puffer people that I was unable to use the fount. I paid the note of $20 that was due on December 6, the note for $20 that was due on January 6, 1919, and the note due on February 6, 1919, the soda-water fount lying idle all this time and not being used by me. . . I refused to pay any of the balance of the notes, and notified the agent of the Puffer Manufacturing Company that the fount was worthless to me and that I was holding it subject to their order." There was additional testimony as to the worthlessness of the soda-fount.

George T. Smith, the plaintiff's agent in the sale to the defendant, testified that at the time of the sale they both examined the soda-water fount and fixtures and "found them to be in good shape," and that the defendant "expressed himself as being satisfied with them;" that the pipes, ducts, and container of the soda-water fount were made of material that would not rust, that the only pipes that could rust were ones that did not go with the fixtures but were installed by plumbers connecting the fount with the mains from the street, and this plumbing work was not included in the contract and was done independently of the plaintiff.

*Battle & Arnold,* for plaintiff. *R. Terry,* for defendant.

BLOODWORTH, J. Basing their opinion on the rulings in *Lunsford* v. *Malsby,* 101 *Ga.* 39 (28 S. E. 496), *Byrd* v. *Campbell Printing Press &c. Co.,* 90 *Ga.* 542 (16 S. E. 267), and other like rulings, a majority of the court rule, that, as the testimony of the defendant in error must be construed most strongly against him, "the judgment should be reversed on the general grounds

of the motion for a new trial; as the evidence demanded a finding that the defendant in error, after he had discovered the defects in the soda-fountain, executed his notes for the property and paid some of them, and such conduct constituted a waiver of all damages caused by the defects." While I raise no issue with my associates as to the principle of law announced in the decisions above referred · to, I cannot agree that under the facts of this case they are applicable and controlling. It is my opinion, that, when considered in the light of all the facts of the case, there is no reversible error. in any of the excerpts from the charge of which complaint is made in the motion for a new trial; that the evidence supports the verdict; and that the judge of the municipal court properly refused a new trial, and the judge of the superior court did not err in ordering that " the certiorari be dismissed and that the judgment of the municipal court be sustained."

*Judgment reversed. Broyles, C. J., and Luke, J., concur. Bloodworth, J., dissents.*