## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF THE STATE OF GEORGIA,

## AT ATLANTA,

# MARCH TERM, 1859.

Present—JOSEPH H. LUMPKIN,  
CHARLES. J. McDONALD, } Judges.  
HENRY L. BENNING,

---

JOSEPH R. DUKES, plaintiff in error, vs. ENOCH NELSON, executor, defendant in error.

[1.] That a vendee, (of a slave,) with warranty, sells without warranty, does not authorize the conclusion, that he *waives* his warranty.

[2.] Although a person who holds a warranty of soundness of a slave, sells the slave without himself making a warranty of his soundness, yet, it does not follow of necessity, that he sustains no loss by the slave's unsoundness. That will depend on how much he gets for the slave, as compared with what he gave for the slave.

[3.] A warranty of soundness, is not negotiable.

[4.] A breach of the warranty, is matter defensive, in a suit for the price.

[5.] [5.] If an agent buy a slave in his own name, giving his own note in payment, and taking a warranty to himself, he may, when sued on the note, set up a breach of the warranty in his defence.

Complaint on note, from Cass county. Tried before Judge CROOK, at March Term, 1859.

This was an action by Enoch Nelson, executor of Hervey H. Nelson, deceased, against Joseph R. Dukes, on the following promissory note:

On or before the first day of January, 1855, I promise to pay H. H. Nelson, or bearer, the sum of nine hundred and fifty dollars for value received, this December 25th, 1854.

(Signed,        JOSEPH R. DUKES.

The plaintiff read the note in evidence and closed.

The defence was, that the note sued on was given for a negro boy named Henry, which H. H. Nelson, plaintiff's testator, sold to defendant, and which negro he warranted to be sound, but which was unsound at the time of the sale.

Defendant first offered and read in evidence the bill of sale from plaintiff's testator, which was as follows:

ABBEVILLE DIST., So. CA.

Received of Joseph R. Dukes, $950, for the purchase of a boy named Henry, I warrant sound and healthy. This December 25th, 1854.

(Signed,)        H. H. NELSON.

Upon this bill of sale, was the following endorsement: "1855, January 22d. I transfer this bill of sale to George H. Gilreath."

(Signed,)        "J. R. DUKES."

It was admitted by plaintiff that the note sued on was given for the negro named in the bill of sale.

Defendant next proved by three physicians, that the negro died of a disease of the heart, called Hypertrophy, and that in their opinion, the negro had the disease at least one year before defendant bought him, and that he died from said disease, and that they would have given nothing for him.

Plaintiff proved by one physician and some other witnesses, that in their opinion, the negro was not diseased at the time of sale. He also proved by Jonathan Jordan, who was the father-in-law of defendant, that defendant informed him, witness, that A. Jefferson Weems, of Cass county, Georgia, had requested him, defendant, to make Nelson an offer for the boy, and at the request of defendant, witness went to

Nelson and offered him nine hundred and fifty dollars for the boy, which he understood to be Mr. Weems limit. Nelson at first declined to accept this offer, but afterwards, a few days before Dukes left South Carolina, he sent the negro to him, accepting the offer. Dukes carried Henry to Cass county, early in January, 1855. Witness saw Henry a few days before he left—did not examine him; he appeared to be sound and healthy. In September, 1857, was at the house of defendant in Cass county. Henry was then dead and this suit had been commenced. In reply to a remark made by witness, that it would be hard for Nelson to lose the boy, defendant said he had nothing to do with the lawsuit; they had merely used his name as he had given the note to Nelson; that he had carried the boy to Cass county, for Mr. Weems, and while he was in his possession he saw no evidence of unsoundness.

Plaintiff then offered and read in evidence the following letter, written by defendant:

CASSVILLE, May 6th, 1856.

MR. ENOCH NELSON:

*Dear Sir:*—I received yours of the 2d of April—twenty-two days on the way. I would have written sooner but for circumstances, being from home, &c. You say you want the money for Henry. Now let me know the longest time you can wait for it; you are not in need of it, I presume. I have been a little pressed, paying for my land, and times a little hard. Henry died some time ago with the dropsy; he is no more. Now come out and buy land with us, and I will give you all the aid that you could wish, as I am acquainted. Let me hear from you; corn is plenty, pretty fair prospects for wheat; health is good; my family well, &c

(Signed,)                    J. R. DUKES.

It was further proved, that the negro Henry died in Weems' possession, and that he belonged to Weems when he died; that Weems bought him from Gilreath in September,

1855; that Gilreath bought him from defendant on the day the transfer on the bill of sale to him bears date.

After the testimony closed, defendant requested the Court to charge the jury:

1st. That if the negro had the seeds of disease in him at the time of the sale to defendant, and afterwards the disease was developed, and the negro died of the disease, the defence is complete, and they should find for the defendant, if the negro was worthless at the time of the sale.

2d. That notwithstanding the transfer of the bill of sale, the defendant may set up as a defence to the action, a breach of the warranty of soundness contained in the bill of sale; and if the jury are satisfied that the negro was diseased at the time of the sale, and in consequence thereof, became worthless, and died, they should find for the defendant.

3d. That defendant had the right to set up this defence, notwithstanding he may have sold the negro.

4th. That it was immaterial whether Dukes bought the negro for himself or Weems, in either event he can set up the defence and if he has sustained it by proof, they should find for defendant.

5th. That if Dukes bought the negro for Weems, Weems may defend through him, especially if they believe the negro died in the possession of Weems.

Each and all of which, the Court refused to charge, and counsel for defendant excepted.

The Court charged the jury, that if Dukes bought with warranty from Nelson, and afterwards sold to Gilreath, and assigned the bill of sale without warranty, then he could not set up his unsoundness as a defence in this action, unless the negro was unsound at the time he bought him from Nelson, and Nelson knew him to be so. And that it was immaterial whether defendant purchased for himself or acted as the agent of Weems; that by parting with the bill of sale, without warranty, he waived his legal right to set up

Dukes vs. Nelson, ex'or.

this defence, and in the absence of warranty by defendant, he could not avail himself of the defence relied on, unless the jury were satisfied that the negro was unsound when Nelson sold him, and that Nelson knew it.

To which charge counsel for defendant excepted.

The jury found for the plaintiff nine hundred and fifty dollars, besides interest and cost; and counsel for defendant, tenders his bill of exceptions, assigning as error, the charge and refusal to charge above excepted to.

WARREN AKIN, for plaintiff in error.

UNDERWOOD & SMITH, contra.

By the Court.—BENNING J. delivering the opinion.

The questions are: first, was the Court below right, in refusing the requests to charge? Secondly, was it right, in its charge?

The requests amounted to this; that, if there existed a breach of the warranty of soundness, made by Nelson to Dukes, the breach was a defence to Dukes, although he might have sold the negro, and transferred his bill of sale, containing the warranty; and this, whether Dukes, in buying from Nelson, did or did not, act as the agent of Weems.

The charge given was, in part, this; that, even if there existed a breach of the warranty, it would be no defence to Dukes, if he had sold the negro, and transferred the bill of sale, made to him, by Nelson, unless he sold the negro, with a warranty of soundness, made by himself; because if he sold the negro, and transferred his warranty, he "waived" his rights under the warranty, unless he himself made a similar warranty?

First, was this part of the charge right? Is it true, that if Dukes sold the negro, and transferred the warranty made

to him, without himself making any warranty, he *waived* his rights under the warranty made to him? We do not think that it is.

[1.] An implication that a man has, by his mere conduct, waived a right, he insisting, that he has not, is a strong measure, and not to be resorted to lightly. The case in which such an implication is allowable, must be a case in which, his conduct has been acted on by another person who would suffer, unless the implication were made; and a case, one in which, the conduct was such, that a reasonable man might be excused for acting on it. Now, did any body act on the idea, that Dukes, by selling this negro, and transferring his warranty, and by not making any warranty himself, *waived* his rights under his warranty? Did Gilreath do so in purchasing as he did, from Dukes? Of what benefit could it be to him, that Dukes should waive his rights under his warranty? It could be of no possible benefit to him. It was possible, and probable, that a *transfer* of those rights to Gilreath, might be of benefit to him, but not, that a waiver of them could. Still more is all this true of Weems, who bought of Gilreath. The idea, that Dukes had waived the warranty, was not one that could, possibly, make any part of the inducement to him, to purchase of Gilreath. Indeed, this idea was one calculated, rather to deter both him and Gilreath, from purchasing, than, to incite either to purchase. If the warranty was waived by Dukes, it was gone, and they, both, were cut off from all chance of profiting by it; whereas, if it was not waived by him, they might think, that, as they would hold under him, they would be entitled to the benefit of his warranty. Nelson could not have acted upon the idea, that Dukes, by transferring his bill of sale, waived his warranty, for whatever he did, consisted in the sale to Dukes, which, of necessity, must have taken place, before the sale by Dukes. These three persons were all there were of whom, it was possible, to say, that

they acted on the idea, that Dukes had waived his warranty. Consequently, as they did not act on the idea, it must be true, that the ground of waiver on which the Court put its charge, was not sufficient.

[2.] Was there any other sufficient ground on which the Court might have put this part of its charge? It was said that, as Dukes sold the negro without warranting his soundness, he could not have sustained any damage, by the fact, that the negro was unsound when he bought him. But whether this is true, or not, depends entirely on the price at which, he sold the negro. It might be, that he sold the negro at half price, and that this fall in the price, was caused by the negro's unsoundness. If this was the case, the unsoundness of the negro, caused him to sustain loss to the amount of half the price he paid for the negro. It is to be presumed, that he did sustain a loss to some extent; for, it is to be presumed, that an unsound negro sold without a warranty of soundness, will not bring the full price of a sound negro. We must presume, then, *prima facie*, that Dukes, although himself, not warranting the soundness of the negro, sustained some degree of loss by reason of his unsoundness; that he got for him, less than he gave. There is, then, no ground here for the charge.

[3.] Did not Dukes's transfer of his bill of sale, to Gilreath, carry all of his rights under the warranty to Gilreath? It carried none of them, to Gilreath. The bill of sale was not a transferable thing. This was decided by this Court, in *Broughton vs. Badgett*, 1 *Kelly*, 76; a case in every essential respect, like the present. There, it was held, that the warrantee retained his rights under the warranty, notwithstanding, that he had transferred his bill of sale containing the warranty, to the person to whom he sold the slave. Such was the decision.

I would not be understood as meaning to say, that there could not be a case in which, the vendee of personal property, might not be entitled to the benefit of a warranty made

to his vendor.  I can conceive of cases in which, the vendee would, in my opinion, be entitled to the benefit of a warranty made to his vendor.  Certainly, however, the *legal* title to the warranty will remain, in all cases, with the vendor, as, a warranty is not a negotiable thing at law.

[4.] It was argued, that the only remedy for a branch of a warranty, is an *action* on the warranty; that such breach is matter that is not pleadable *in defence*, to an action for the price.  And there are a few early cases that look this way. But they are not sufficient to stand a moment, against the cases on the other side.  The cases on that side, are numerous; they go back in a long series, far into the past; failure of consideration being an old defence; they are not confined to any one place or country, but exist wherever the common law prevails; they have in their favor the whole of the argument from expediency, for they make one action, accomplish the work of two actions.  We cannot yield to this argument.

[5.] Hitherto, I have been proceeding, with an eye to that branch of the evidence which made Dukes, a principal in the purchase of the negro.  It is time to turn to the branch of the evidence which makes him an agent in the purchase; the agent of Weems.  Supposing him to have acted, in the purchase, as the mere agent of Weems, was that a thing, to exclude him from the defence of a breach of the warranty? We think not.  His acting as agent, if he so acted, was, as far as appears, unknown to the vendor, Nelson.  It does not appear, that his principal's name was disclosed to Nelson. At any rate, Nelson's administrator, the plaintiff in the suit, has elected to treat him as principal, and he has made no objection to being so treated.  This estops the plaintiff from saying, that he was not principal, and therefore, that the loss was not his, but was Weems's.

[5.] Again, suppose we exclude Dukes from the defence, on the ground, that he acted as agent; as the agent of Weems. In that case, we give the right to sue for the breach of the

warranty, to Weems; and consequently, the only effect will be, that we make Dukes pay Nelson, Weems pay Dukes, and Nelson pay Weems. So, the loss will at last fall on Nelson. Why, then not let it do so at first? Why not let Dukes, when sued for the price, set up the breach of the warranty for the benefit of Weems, his principal? We see no reason why we should not. Of different routes in law, that route ought to be taken, which is the shortest, the quickest, and cheapest.

Upon the whole, then, we do not see any ground that, in our opinion, was sufficient to justify the part of the charge in question. What the Court should have charged, is, we think, about as follows: That a breach of the warranty, was matter which Dukes had the right to rely on, in his defence, and this, whether, in selling the negro himself, if he did sell the negro, he sold him, with, or without a warranty; that, if he sold the .negro without a warranty, the measure of his damages, was the difference between what he gave, and what he got, for the negro; that if he was acting merely as the agent of Weems, then the measure of the damage, was the loss sustained by his principal, Weems; and that the note ought to be reduced by a sum equal to what the jury might find the damage to be.

From what has been said, it must be apparent, that we consider the requests as, in the main, proper. It is needless, therefore, to say anything further as to them.

Judgment reversed.