48032. EVERSHINE PRODUCTS, INC. v. SCHMITT et al.

PANNELL, Judge. This action was brought by a husband and wife seeking, for the husband, recovery of hospital and doctor's bills and loss of consortium, and, for the wife, damages for her pain and suffering for injuries allegedly received by her from the use of a cleaning fluid while removing wax from floors. The action was predicated on three counts. Count 1 was based on negligence "in preparing and selling a highly acidic and caustic type material as a general household cleaner without any warning on the container stating the danger of using said product in an undiluted or full strength concentration." Count 2 was based on an implied warranty "of fitness [of the cleaning fluid] for use as a cleaning agent for floors and other uses and the implied warranty of merchantable quality for use as a cleansing agent and with the expressed warranty that said 'Evershine Leisure-Clean' was green magic — saves time — money — labor." Count 2 also alleged that the plaintiff-wife purchased the bottle of cleaner "in reliance on the judgment and representations of" the defendant. The only actual representations proven were those on the label, if any. Count 3 was based on the allegations "that the defendant corporation by means of advertisements impliedly warranted to the public, including the plaintiff, Barbara Schmitt, that their product 'Evershine Leisure-Clean' could be used safely for household and other cleaning tasks and expressly warranted that said product was usable for all household cleaning." Reliance thereon was also alleged. The only advertisement proven was the label on the bottle.

The evidence showed the plaintiff-wife bought and used the cleaning fluid for use in cleaning or stripping wax from a hardwood oak floor. One side of the label on the bottle of the cleaning liquid had the name of the product and the name of the defendant and the words "For light-to-heavy cleaning" under the

name, and the words "Green magic — saves time — money." The other side of the label showed the mixture was "heavily concentrated," followed with directions for use: *"Wax Stripper:* Add 6 parts water to 1 part *Leisure-Clean* (use 4 parts water if old wax has built up), spread liberally, let stand for 10 minutes, scrub lightly, wipe up and rinse. *General Cleaner:* Add 8 to 10 parts water to 1 part *Leisure-Clean.* Perfect for walls, floors, appliances, painted woodwork, kitchens, bathrooms, furniture. Also cleans boat decks, seats, trim, leatherette. *Motor Cleaner:* Use full strength for easy cleaning of car and boat motors; also for those built up grease and oil spots on garage and carport floors. Spray or brush on, let stand for 10 to 15 minutes, flush away with water hose nozzle set on high pressure. *White Wall Tires:* Add 4 parts water to 1 part *Leisure-Clean.* Use this formula for carports, patios, bricks, etc., also excellent for cleaning fiber glass boat hulls." The cleaning fluid was made up according to defendant's formulation and shipped to defendant in drums and packaged by defendant with its label thereon and distributed to others for sale to the general public. Plaintiff-wife bought the cleaning fluid at a military commissary store.

Verdict and judgment was rendered in favor of the plaintiff. Defendant's motion for new trial was overruled. Defendant appealed to this court enumerating error on the refusal of the trial judge to direct a verdict as to each count of the complaint, and to grant motions for judgment notwithstanding the verdict, and on the overruling of the motion for new trial complaining of charges given, failure to charge requests and refusal to permit introduction of certain evidence. *Held:*

1. Generally, before a recovery may be had for breach of warranty, this state has recognized the necessity of privity between the parties where a plaintiff-purchaser of an article has been injured because of its alleged defectiveness and brings an action based on warranty. That is, if a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as distributor or retailer from whom plaintiff purchased the product. See in this connection, *Broughton v. Badgett,* 1 Ga. 75; *Dukes v. Nelson,* 27 Ga. 457; *Van Winkle & Co. v. Wilkins,* 81 Ga. 93, 94 (7) (7 SE 644); *Smith v. Williams,* 117 Ga. 782, 784 (45 SE 394); *Farlow v. Jeffcoat,* 78 Ga. App. 653 (2) (52 SE2d 30);

*General Motors Corp. v. Halco Instruments, Inc.,* 124 Ga. App. 630 (185 SE2d 619). While the Act of 1957 (Ga. L. 1957, p. 405; former Code Ann. § 96-307) provided an implied warranty to the ultimate consumer for whom the product was intended, this Act was repealed by Section 109A-10 — 103 of the Ga. Uniform Commercial Code (Ga. L. 1962, pp. 156, 427). See *Wood v. Hub Ford Co.,* 110 Ga. App. 101, 103 (137 SE2d 674). This does not mean, however, that there can be no warranties if the manufacturer or producer makes an express warranty to the ultimate consumer. This is commonly done in the sale of a number of items, such as automobiles and household appliances, etc. An exception to this rule requiring privity is expressed in Ga. Uniform Commercial Code § 109A-2—318, but that exception has no application here. *General Motors Corp. v. Halco Instruments, Inc.,* 124 Ga. App. 630, 634, supra. Whether or not advertising claims on the label here constitute an express warranty to the retail purchaser by the producer of the product, it is not necessary to decide, as the evidence here shows no breach of the claims on the label in the present case. The evidence discloses the product cleaned better than any the plaintiff-wife had ever used and there was no evidence it did not save time and money. And even should we assume there was an express warranty by implication, arising out of the words on the label that the article sold was safe to use without danger to the user, that could only apply if the article was used in a normal manner or as here, according to the directions on the label. See *Rupee v. Mobile Homes Brokers, Inc.,* 124 Ga. App. 86, 87 (183 SE2d 34). The evidence here demands a finding that at all times the dilutions recommended on the label were not followed, but concentrations were used greatly exceeding the directions given. The trial judge, therefore, erred in refusing to direct a verdict on Counts 2 and 3 of the complaint, and in overruling the motions for judgment notwithstanding the verdict thereon.

2. Code § 105-106, as amended by the Act of 1968 (Ga. L. 1968, pp. 1166, 1167) now provides: "No privity is necessary to support an action for a tort; but if the tort results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract, and except as provided in Code § 109A-2—318. However, the manufacturer of any personal property sold as new property, either directly or

through a dealer or any other person, shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained; a manufacturer may not exclude or limit the operation hereof." If we should construe either Count 2 or Count 3 as being a tort action under this Section because of the failure of the product to be merchantable, or not suitable to the use intended, which defects were the proximate cause of the alleged injuries, we would, of necessity, apply the same rule by analogy; because the action, though in tort, is based not on negligence, but on the ground that the proximate causes of plaintiff's injuries were the lack of merchantability or lack of suitability to the use intended of the product purchased, which are identical to the factors of an action on an implied warranty. See Ga. UCC Section 109A-2—314 (2) (c). There is no proof of an implied warranty under Ga. UCC Section 109A-2—315.

We therefore reach the same conclusion that the evidence does not show the product was used in a normal manner, that is, according to the directions on the label.

3. However, as to Count 1, based upon negligence because of the failure to have a warning on the label of the product, different principles of law are applicable. In a tort action no privity between the producer or manufacturer and the ultimate purchaser is necessary (Code Ann. § 105-106; *King Hardware Company v. Ennis,* 39 Ga. App. 355, 356 (6) (147 SE2d 119)) and one placing in the channels of commerce an item containing a defect which under foreseeable conditions is likely to cause injury may be negligent because of failure to warn the prospective purchaser. *Washburn Storage Co. v. General Motors Corp.,* 90 Ga. App. 380 (83 SE2d 26). Under the evidence adduced, we cannot say that the jury was not authorized to find that the defendant should have foreseen that a user of the cleaner was likely to both use in solutions stronger than directed and for extended periods of time, and that the defendant was negligent in failing to warn against each use by placing such warning on the label of the product.

4. The defendant sought to introduce in evidence containers with labels thereon of five other cleaning liquids by well known

manufacturers containing approximately the same PH factor as defendant's product, which plaintiff's evidence had showed would cause burns on the skin *in that concentration* after prolonged exposure. It was offered for the purpose of showing that others who made a similar product did not place warnings on their labels as to the danger of extended exposure to the undiluted or insufficiently diluted product to be considered solely on the question of defendant's alleged negligence in not having a warning on its label. The trial judge refused to admit the evidence and appellant enumerates error thereon. While the practice of others engaged in a similar business is *not the standard* by which to measure the care required by one preparing and selling a product which may be dangerous under certain circumstances (*Georgia-Alabama Coca-Cola Bottling Co. v. White,* 55 Ga. App. 706 (191 SE 265); *Shirley v. Woods,* 98 Ga. App. 111, 115 (105 SE2d 399)), yet the acts of the defendant, in accordance with such custom, *may be considered in determining whether the defendant has met the standard of ordinary care required by law. Dawkins v. Jones,* 119 Ga. App. 796, 798 (168 SE2d 881); *Stuckey's Carriage Inn v. Phillips,* 122 Ga. App. 681, 688 (178 SE2d 543); *Standard Oil Co. v. Reagan,* 15 Ga. App. 571 (84 SE 69); *Queen v. Patent Scaffolding Co.,* 46 Ga. App. 364 (167 SE 789); *Arrington Brothers & Co. v. Fleming,* 117 Ga. 449 (43 SE 691). The following cases: *Smith v. The Morning News, Inc.,* 99 Ga. App. 547 (109 SE2d 639); *Bazemore v. Powell,* 54 Ga. App 444 (188 SE 282); *Arnold v. Chupp,* 93 Ga. App. 583 (92 SE 2d 239); *Wright v. Concrete Co.,* 107 Ga. App. 190, 199 (129 SE2d 351); *Miller & Co. v. Moore, Sims & Co.,* 83 Ga. 684 (10 SE 360) have no application to the present case as these cases involved either (a) customs of the defendant, (b) customs of the trade as part of a contract, (c) or a custom which was contrary to statute. The trial court erred in refusing to admit the evidence offered.
5. The defendant offered in evidence in toto testimony relating to research done by the defendant before designing the label placed upon the product in this case. Some of this evidence was a mere legal conclusion of the witness and inadmissible. There was, accordingly, no error in refusing to admit the whole testimony in evidence.
6. The trial court erred in ruling out evidence offered by the defendant showing the amount of the property distributed, the amount of years involved, and that during that time they had received no complaint from the product. This evidence was

admissible on the question of whether or not the defendant was negligent in failing to place a warning label on the product.

7. Other enumerations of error not herein specifically dealt with are either withdrawn, the rulings complained of made moot by the rulings dealt with in Divisions 1 and 2 of this opinion, or are without merit.

8. The judgment of the trial court is reversed for the reasons above given.

*Judgment reversed. Eberhardt, P. J., and Stolz, J., concur.*

SUBMITTED APRIL 9, 1973 — DECIDED SEPTEMBER 27, 1973 — REHEARING DENIED OCTOBER 19, 1973.

*Swift, Currie, McGhee & Hiers, George W. Hart, Frederick F. Saunders, Jr.,* for appellant.

*Charles H. Hyatt, Robert J. NeSmith, Grogan, Jones & Layfield, Milton Jones,* for appellees.