**ARMSTRONG CORK COMPANY**

v.

**DROTT MANUFACTURING CO.**

Civ. A. No. 74–2299.

United States District Court,
E. D. Pennsylvania.

Jan. 24, 1977.

Harry P. Begier, Philadelphia, Pa., for plaintiff.

Ralph D. Samuel, Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, District Judge.

In this diversity action, plaintiff seeks damages for the destruction of a logging machine under three theories of liability: breach of implied warranties, negligence and strict liability. Plaintiff, a Pennsylvania corporation with its principal place of business in Lancaster, purchased a Drott 40 BLC Logger with Feller Buncher, hereafter "logger", in February, 1973. The logger was manufactured in Wisconsin by defendant, Drott Manufacturing Company, a division of J. I. Case Company, a Delaware corporation. In April, 1974 the logger was destroyed by a fire of unknown origin which occurred within the logger. Defendant has moved for partial summary judgment on the issues of implied warranty and strict liability. We will grant the motion as to strict liability, but deny it as to the implied warranties.

*Strict Liability*

Because the relevant and material facts on the issue of strict liability are undisputed, we will discuss this aspect of defendant's motion first. Defendant's motion is predicated on the theory that Georgia law precludes a recovery by a corporate consumer for property damage caused by a defective product under a strict liability theory. Plaintiff does not dispute this statement of Georgia law, but contends that Pennsylvania or Wisconsin law must be applied. Under either Pennsylvania or Wisconsin law, a corporate plaintiff might recover under a theory of strict liability.

We are presented with a difficult conflicts-of-law issue.

■ As a federal court deriving jurisdiction from the diversity of the parties, we must apply the conflicts-of-law rule of the forum state, Pennsylvania. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Pennsylvania conflicts-of-law rule for torts has evolved from the traditional strict *lex loci delicti* rule to a more flexible approach first expressed in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964) and later refined in *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966); *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966) and *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970).

■ The present Pennsylvania rule is that in the case of a true[1] conflict of laws as to a particular issue, here, strict liability, the Court must apply the law of the jurisdiction which has the greatest interest in applying its law.

"In determining which state has the greater interest in the application of its law, one method is to see what contacts each state has with the accident, the contacts being relevant only if they relate to the 'policies and interests underlying the particular issue before the court'. *Griffith, supra*, 416 Pa. at 21, 203 A.2d [796] at 805. When doing this it must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale * * *". *Cipolla v. Shaposka*, 439 Pa. 566, 267 A.2d 856.

Three states are involved in our analysis of the choice of law under plaintiff's strict liability theory: Pennsylvania, Wisconsin and Georgia. First, Pennsylvania is the "home"[2] state of the plaintiff; plaintiff has its principal place of business here and it is incorporated here. Approval for the purchase of the logger was finalized by plaintiff's Executive Committee here, and the check for payment was issued from plaintiff's Pennsylvania corporate headquarters.

Application of Pennsylvania's strict liability rule would further the policy underlying the rule. Plaintiff, a Pennsylvania consumer, having purchased an allegedly defective product, would be afforded a recovery from the manufacturer for the damage caused by the defect. *See Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966); *Restatement (Second) of Torts* (1965) § 402(A) and comment *c.* The burden of the risks and costs of damage to the logger would be shifted from the Pennsylvania consumer to the manufacturer, judged, as a matter of policy, better able to bear these risks. Pennsylvania is an "interested" jurisdiction.

Wisconsin is the place where the logger was manufactured and where the injury-producing conduct may have occurred. Wisconsin has also adopted the strict liability rule of § 402A of the *Restatement* for substantially the same reasons as Pennsylvania. The manufacturer is in "the paramount position to distribute the costs of the risks created by the defective product * * *". *Dippel v. Sciano*, 37 Wis.2d 443, 155 N.W.2d 55, 58 (1967). Application of Wisconsin law would likewise shift the burden of injuries and damages caused by defective products from the ultimate purchaser-consumer to the manufacturer-seller. Here the impact of a recovery would fall upon the Wisconsin manufacturer, the party deemed appropriate to bear these costs.

■ Georgia is also an interested jurisdiction. Plaintiff purchased the logger

---

1. In this case, we are presented with a "true" conflict of laws. See Cavers, *The Choice-of-Law Process* (1965). *Cf. Kuchinic v. McCrory, supra; McSwain v. McSwain, supra.*

2. In products liability cases, one commentator has concluded that the most relevant concepts in resolving conflicts of laws issues are: place of manufacture, place of last sale prior to the occurrence, place of injury and personal status (i. e., residence) of plaintiff. Kuhne, *Choice of Law in Products Liability*, 60 Cal.L.R. 1, 32–33 (1972). *See also Restatement (Second) Conflict of Laws* (1971) § 145.

from Midco-Southern Company,[3] an independent distributor of defendant's products in February, 1973 in Georgia. A 3% Georgia sales tax was paid. Thereafter the logger was serviced and inspected in Georgia, and it was used there continuously and exclusively from February, 1973 until the fire occurred in April, 1974, during plaintiff's Georgia-centered operations. Georgia also has a strict liability rule, providing *natural persons* a cause of action against manufacturers of defective products which cause injury. Ga. Code Ann. § 105–106 (1967). *See Center Chemical Company v. Parzini,* 234 Ga. 868, 218 S.E.2d 580 (1975); *Ellis v. Rich's Inc.,* 233 Ga. 573, 212 S.E.2d 373 (1975). However, the Georgia rule limits the risk-spreading function only to cases involving natural persons, thus excluding purchaser corporations such as plaintiff from the protections afforded by the strict liability rule. By limiting this risk-shifting to "natural persons", Georgia has set a policy which limits the potential scope of a manufacturer's liability, thus encouraging manufacturing and fabrication of products in Georgia. *See Cavers, supra,* at 152. Application of its rule here would further that policy.

Which jurisdiction is the most interested, the one predominantly concerned? We have concluded that Georgia has the greatest interest in applying its strict liability rule under the facts of this case. First of all, plaintiff was engaged in logging operations in Georgia for over a year and used the logger in connection with these operations. After the logger was purchased from Midco-Southern, it never left Georgia's borders. The fact that plaintiff is a Pennsylvania corporation with its principal place of business in Pennsylvania does not outweigh Georgia's interest in regulating the affairs of corporations which chose to conduct operations there and purchase products for these operations. Plaintiff necessarily subjected itself to Georgia's obligations and laws, including Georgia's strict liability rules, while it was engaged in continuous business operations in that state.

The policy underlying Georgia's contracted scope of strict liability would be furthered in this case. By denying this corporate plaintiff the opportunity to recover the property damage, which is the only damage alleged, manufacturing activities would be encouraged and fostered.

On the other hand, we do not believe Pennsylvania's policies would be significantly furthered by the application of its law to the strict liability issue. The only relevant contact in this case is that a Pennsylvania-based corporation has suffered harm for which recovery might be had if Pennsylvania law were applicable. But that is the only connection and interest that Pennsylvania had with the purchase, use or damage to the logger in question. We do not believe this single connection is sufficient to place the predominant concern or interest in Pennsylvania to justify application of its law to the issue. In *Cipolla, supra,* 439 Pa. at 567, 267 A.2d at 857, the Supreme Court of Pennsylvania expressed the admonition: "departures from the territorial view of torts ought not to be lightly undertaken", quoting *Gordon v. Parker,* 83 F.Supp. 40, 42 (D.Mass.1949).

Justice Roberts dissented in *Cipolla* and urged that the "better-rule-of-law" approach be adopted. The Court should, he reasoned, analyze the wisdom of the policies underlying the conflicting rules and select the state's law which represents the sounder view of the law. Obviously that is what plaintiff is urging in this case. We should reject Georgia law, plaintiff argues, because:

> "the policy behind the Georgia strict liability rule, if it is conservatism, would not be furthered by its application in this case to a Pennsylvania consumer and a Wisconsin manufacturer. If there is no discernable policy at all, it obviously would not be furthered by its application in any event." (Plaintiff's memorandum in opposition at 11).

It is to be remembered that in *Cipolla,* the Pennsylvania Supreme Court applied the law of a sister jurisdiction which provided a

---

**3.** Midco-Southern purchased the logger from defendant.

lower standard of protection on the issue involved than did Pennsylvania even though the plaintiff was a Pennsylvania resident. We believe we are in full accord with *Cipolla* in concluding that Pennsylvania is not more "interested" than Georgia in applying its law to the strict liability issue.

Wisconsin is an "interested" jurisdiction since it is the place where defendant manufactured the logger in question. However, no Wisconsin purchaser-consumer, for whom the strict liability rule was fashioned to protect, has suffered damage in this case. Application of Wisconsin law would hardly further the policy of consumer protection except in an indirect and remote manner: the manufacturer here would bear the brunt of the risk-shifting merely because an allegedly defective product was manufactured in Wisconsin. In essence, application of Wisconsin law would simply punish the manufacturer without conferring a concomitant benefit on a Wisconsin consumer. Again, we conclude that the interest of Wisconsin in applying its rule pales in comparison to Georgia's robust interest in the liability question under the facts of this case. Hence, we do not perceive a strong justification for applying Wisconsin law.

There is an additional factor which we consider important in this case. No personal injury is involved. Plaintiff corporation is simply seeking damages for the destruction of its property resulting from a fire of apparently unknown origin. Neither catastrophic loss nor grievous personal injury has been inflicted upon an unwary consumer of a household appliance or toy. The essence of the controversy simply involves a product and two corporations, one which manufactured it and the other which employed it as part of its business operations. *Cf. Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964); *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966); *McSwain v. McSwain*, 420 Pa. 86, 215 A.2d 677 (1966). Georgia is not the fortuitous locus of an injury-producing accident involving Pennsylvania domiciliaries; rather Georgia is the state in which the relationship between defendant and plaintiff is centered. Accordingly, we conclude that the law of Georgia must be applied on the strict liability question. Under Georgia law, defendant is entitled to summary judgment on the issue of strict liability.

*Implied Warranties*

Defendant has also moved for summary judgment on plaintiff's theory of breach of implied warranties. Plaintiff alleges that defendant breached its implied warranties that the logger was safe and proper for the purpose for which it was intended and was of good and merchantable quality. Defendant argues that there was no privity of contract between plaintiff and defendant. Under Georgia law, absent privity, a consumer cannot recover from a manufacturer for breach of implied warranties where a consumer does not purchase directly from a manufacturer. *Evershine Products, Inc. v. Schmitt*, 130 Ga.App. 34, 202 S.E.2d 228 (1973). In the alternative, defendant argues that as a matter of law plaintiff is precluded under Ga.Code Ann. § 109A–2–316, from recovery for breach of implied warranties by the defendant's express warranty which included disclaimers on the logger.

Plaintiff argues that Pennsylvania law must be applied to the implied warranty claim because Pennsylvania is the most interested jurisdiction on this issue. In the alternative, plaintiff contends that if Georgia law were applied, factual disputes preclude the entry of summary judgment on the implied warranties claim. Plaintiff contends it is disputed whether plaintiff received the warranty disclaimer at the time of delivery of the logger and that the conduct of defendant in paying for warranty repairs may establish the existence of a warranty and satisfy the requirement of privity under Georgia law.

We are thus met with twin issues: which law to apply, and whether under that law, defendant is entitled to summary judgment on the implied warranties count of the complaint. We conclude that Georgia law controls disposition of implied warranties and that summary judgment is not appropriate on this issue.

■ The Pennsylvania conflicts-of-law rule in actions under the Uniform Commercial Code is found in 12A P.S. § 1–105 and provides as follows:

"§ 1–105. Territorial Application of the Act; Parties' Power to Choose Applicable Law

(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state. * * * "

Essentially, the conflicts issue is whether the sale of the logger by Midco-Southern to plaintiff was a transaction bearing an appropriate enough relation to Pennsylvania to justify application of this state's law.[4] If the transaction bore an appropriate relation to Pennsylvania, then Pennsylvania would obviously be the most interested jurisdiction.

■ Plaintiff's argument that Pennsylvania is an interested jurisdiction under the rubric of *Griffith v. United Air Lines, supra,* is not persuasive, however, as the facts underlying the sale and use of the logger show that the transaction does not relate to the policies underlying the Pennsylvania rule. It is undisputed that plaintiff purchased the logger from Midco-Southern Company on February 22, 1973, and received delivery at Macon, Georgia. Midco-Southern Company, by agreement with defendant, an independent distributor of defendant's products,[5] has a place of business at Marietta, Georgia. On February 28, 1973, Midco-Southern billed plaintiff for the price of the logger together with 3% Georgia sales tax; plaintiff paid Midco-Southern for the full amount invoiced, less 5% discount for payment within 15 days. The logger was thereafter serviced by Midco-Southern on numerous occasions in Georgia and it was used exclusively and continuously in Georgia by plaintiff's Southern Pine Woodland Division until it was damaged by fire more than a year later. It thus appears that the entire transaction was centered in Georgia, and it is logical that Georgia law should provide the rules governing the legal consequences of the sale to plaintiff.

Plaintiff points out that members of plaintiff's executive committee in Pennsylvania approved the purchase of the logger and that the check in payment was drawn and signed in Pennsylvania. These collateral activities, however, are not sufficient to diminish the importance of the basic facts that the sale was entirely negotiated and consummated in Georgia. Employees of the plaintiff entered into the contract for the purchase of the logger from Midco-Southern in Georgia, delivery was made in Georgia, Georgia sales tax was paid and warranty repairs and service were performed in Georgia. Certainly the parties to the purchase contract expected that the law of Georgia would control the rights and liabilities attaching to a Georgia transaction. No aspect of the transaction significant enough to create a paramount interest in the application of Pennsylvania law occurred in Pennsylvania. *Cf. General Ins. Corp. etc. v. Pennsylvania Pressed Met. Inc.,* 366 F.Supp. 139 (M.D.Pa.1973) *aff'd.* 506 F.2d 1051 (3d Cir. 1974); *Tucker v. Capital Mach. Inc.,* 307 F.Supp. 291 (M.D.

---

**4.** The Pennsylvania rule for recovery for breach of implied warranties is that no privity is required between the manufacturer and the ultimate purchaser. *See Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1960). Both parties agree, however, that recovery for a breach of implied warranties under Georgia law requires privity of contract. The Georgia rule is apparently the same as the Wisconsin approach. *See Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967). Hence, we are presented

with a conflict only if the transaction bears an "appropriate" relation to Pennsylvania.

**5.** Assuming *arguendo* that Midco-Southern was an agent of defendant, as plaintiff argues, the justification for an application of Pennsylvania law is not strengthened. If this agency theory were correct, then Wisconsin law might be applicable. However, Wisconsin requires privity, as does Georgia, and no conflict of laws is thereby created.

Pa.1969). Accordingly, we conclude that Georgia law also applies to the issue of implied warranties.

■ Turning next to the defendant's motion for summary judgment, we conclude that it must be denied. It is not clear on this record whether any warranties, expressed or implied, were extended from defendant to plaintiff, or whether by conduct defendant assumed obligations inconsistent with a lack of contractual privity. Moreover, it is not clear whether defendant's express warranty, which included the disclaimers, was actually delivered to and accepted by plaintiff. Accordingly, until these factual disputes are resolved, summary judgment on the implied warranties count of the complaint cannot be granted. An appropriate order will be entered.