**FIRST DIVISION
DOYLE, C. J.,
ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 11, 2016**

# In the Court of Appeals of Georgia

A16A1063. YOUNGBLOOD v. ALL AMERICAN QUALITY FOODS, INC.

ANDREWS, Presiding Judge.

Saundra Youngblood was injured when she slipped and fell in a puddle of water on the floor of a grocery store owned and operated by All American Quality Foods, Inc. d/b/a Food Depot. She sued Food Depot seeking recovery for her injuries alleging that, in violation of the duty imposed under OCGA § 51-3-1, Food Depot negligently failed to exercise ordinary care to keep the store premises safe for her as an invited shopper. Youngblood appeals from the trial court's grant of summary judgment in favor of Food Depot. For the following reasons, we affirm.

Under OCGA § 51-3-1, where the owner or occupier of land invites the public to enter the premises for a lawful purpose, "he is liable in damages to such persons

for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." "To recover on a theory of premises liability [under OCGA § 51-3-1], a plaintiff must show injury caused by a hazard on . . . [the] premises or approaches that the owner or occupier should have removed in the exercise of ordinary care for the safety of the invited public." *American Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444 (679 SE2d 25) (2009). The fundamental basis for imposing this liability is proof that the premises owner had superior knowledge of the hazard on the premises that caused harm to the invitee. *Robinson v. Kroger*, 268 Ga. 735, 736-738 (493 SE2d 403) (1997). "[I]t is . . . only when the [hazard] is known to the owner or occupant and not known to the person injured that a recovery is permitted." *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327) (1980) (citation and punctuation omitted). Accordingly, to recover under OCGA § 51-3-1, a plaintiff has the burden of proving: (1) that, prior to the slip and fall, the owner had actual knowledge of the hazard which caused the slip and fall, or that, under the circumstances, the owner was chargeable with constructive knowledge of the hazard, and (2) that, despite the exercise of ordinary care, the plaintiff lacked knowledge of the hazard prior to the slip and fall. *American Multi-Cinema*, 285 Ga. at 444; *Robinson*, 268 Ga. at 736; *Alterman Foods*, 246 Ga. at 622-623. A plaintiff can prove

2

the owner's constructive knowledge of the hazard by showing: (1) that an employee of the owner was in the immediate area of the hazard and could have easily seen the hazard and removed it prior to the slip and fall, or (2) that the hazard had existed on the premises for a sufficient length of time that it should have been discovered and removed if the owner had exercised ordinary care to inspect the premises to keep it safe. Id. at 622-623; *Banks v. Colonial Stores, Inc.*, 117 Ga. App. 581, 584-585 (161 SE2d 366) (1968). Under OCGA § 51-3-1, an owner "is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters," which includes . . . "inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge. . . ." *Robinson*, 268 Ga. at 740. In the absence of facts showing that the premises are unusually dangerous, an owner has no duty to continuously patrol the premises to discover and remove possible hazards. *Alderman Foods*, 246 Ga. at 622. It follows that an owner normally "is permitted a reasonable time to exercise care in inspecting the premises" (Id. at 622) and "a reasonable time after notice of a hazardous condition to exercise care in correcting such condition." *Pickering Corp. v. Goodwin*, 243 Ga. App. 831, 832 (534 SE2d 518) (2000).

3

The facts relevant to Youngblood's claim under OCGA § 51-3-1 showed the following: It is undisputed that, while shopping on the Food Depot store premises, Youngblood stepped in a puddle of water on the floor in aisle 10 of the store (the beverage aisle) and slipped and fell. Youngblood said she did not see the clear liquid before she slipped and fell. The record shows that the water may have come from a broken water bottle, but there is no evidence how the bottle was broken, or how the water otherwise got on the floor. While Youngblood was somewhere on the store premises, another store customer, who was checking out at the front of the store, told the check-out cashier about a liquid spill in aisle 10 of the store. The cashier told the check-out bagger, and the bagger then went to get a bucket and mop and a wet floor sign and took those items to aisle 10 to put down the sign and clean up the spill. It is unclear whether Youngblood slipped and fell in the spill before or after the cashier was notified of the spill. In any event, when the bagger got to the spill with the clean-up items, Youngblood had already slipped in the puddle and was lying on the floor. Youngblood confirmed that she slipped and fell before a store employee arrived and found her on the floor, and she could not say how long she had been on the floor before a store employee arrived. There was no evidence that the cashier, after being notified of the spill, delayed telling the bagger about the spill, and no evidence that

4

the bagger delayed getting the clean-up items and going to the spill. Other evidence showed that Food Depot had an inspection policy in place that was performed at the store on the day of the slip and fall; that pursuant to this policy, aisle 10 was inspected about 20 minutes before the slip and fall; and the inspection showed no spill or other hazard in the aisle at that time. There was no evidence that any store employee was in the immediate area of the water spill at issue who could have easily seen the hazard and removed it prior to the slip and fall. There was no evidence of any unusually dangerous condition on the store premises requiring more frequent or continuous inspections to discover and remove recurring hazards. In fact, there was no evidence of any other slip and fall at the store other than the present incident.

On these facts, Food Depot moved for summary judgment pursuant to OCGA § 9-11-56.

> To prevail on a motion for summary judgment [under OCGA § 9-11-56], the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. The moving party may carry this burden either by (1) presenting evidence negating an essential element of the nonmoving party's claim, i.e., affirmatively disproving the element with evidence which makes it impossible for the nonmoving party to prove the element at trial; or (2) demonstrating an absence of evidence to support an essential element of the nonmoving party's claim. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point

to specific evidence giving rise to a triable issue. On appeal, we review de novo the trial court's ruling on a motion for summary judgment, construing all facts and reasonable inferences therefrom in the light most favorable to the nonmovant.

*Parks v. Multimedia Technologies, Inc.*, 239 Ga. App. 282, 286-287 (520 SE2d 517) (1999) (citations and punctuation omitted) ; *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (405 SE2d 474) (1991).

Applying these principles, the record supports the trial court's grant of summary judgment in favor of Food Depot. The parties do not dispute that a factual issue exists as to whether Youngblood (in the exercise of ordinary care for her own safety) should have discovered and avoided the spilled water on the floor. See *Robinson*, 268 Ga. at 741-743. Rather, the trial court granted Food Depot's motion for summary judgment by finding: (1) that there was no evidence showing Food Depot had constructive knowledge of the hazardous spill prior to Youngblood's slip and fall; and (2) that, even construing the record to show that Food Depot acquired actual knowledge of the spill (when the cashier was told about the spill) prior to Youngblood's slip and fall, there was no evidence that, after the cashier was told about the spill, Food Depot failed to exercise ordinary care to attempt to remove the spill before Youngblood slipped and fell.

6

As to the trial court's finding that no evidence showed constructive knowledge, this was supported: (1) by the absence of any evidence that a Food Depot employee was in the immediate area of the spill who could have easily seen the hazard and removed it prior to the slip and fall (*Alderman Foods*, 246 Ga. at 622-623), and (2) by evidence that Food Depot performed an inspection procedure prior to the slip and fall that was adequate, as a matter of law, to show the exercise of ordinary care to keep the premises safe under OCGA § 51-3-1. Evidence showed that Food Depot inspected the area of the store where Youngblood slipped and fell about 20 minutes prior to the slip and fall, and that, at that time, no spill or other hazard was present. Where the owner performs an inspection showing that no hazard existed in an area within a brief period prior to an invitee's injury as a result of a hazard occurring in the same area, this is sufficient to establish, as a matter of law, that the owner exercised ordinary care under OCGA § 51-3-1 to inspect the premises to keep it safe, and to show that the owner had no constructive knowledge of the hazard. *Matthews v. The Varsity, Inc.*, 248 Ga. App. 512, 514 (546 SE2d 878) (2001) (inspection 20 minutes prior to incident found adequate as matter of law).

The trial court also correctly found that, even if Food Depot acquired actual knowledge of the spill just prior to Youngblood's slip and fall, the present facts show

7

as a matter of law that, after acquiring this knowledge, Food Depot exercised ordinary care to attempt to remove the hazard prior to the slip and fall. The evidence showed that, while Youngblood was on the store premises, Food Depot acquired actual knowledge of the spill at issue when another store customer told a check-out cashier about the spill. Construing the evidence in favor of Youngblood to show that she slipped and fell after the cashier was told about the spill, there is no evidence that Food Depot failed to exercise ordinary care after acquiring actual knowledge. An owner with knowledge of a hazard superior to that of an invitee is not an insurer of the invitee's safety, but has a duty under OCGA § 51-3-1 to exercise ordinary care to protect the invitee from the hazard. *Robinson*, 268 Ga. at 740. An owner is normally permitted "a reasonable time after notice of a hazardous condition to exercise care in correcting such condition." *Pickering Corp.*, 243 Ga. App. at 832.

> Exactly what constitutes "ordinary care" varies with the circumstances and the magnitude of the danger to be guarded against. Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in each particular case. But, to be negligent, the conduct must be unreasonable in light of the recognizable risk of harm. The particular standard of care to be applied and whether the owner breached that standard are usually issues to be decided by a jury. However, these issues may be decided by the court in plain and palpable cases where reasonable minds cannot differ as to the conclusion to be reached.

8

*Lau's Corp.*, 261 Ga. at 493 (citations and punctuation omitted). The trial court correctly found that this was such a plain and palpable case. After being given notice of the spill, Food Depot exercised ordinary care and acted within a reasonable time when the store cashier dispatched the bagger to clean up the spill, the bagger obtained items to remove the spill, went to the location of the spill, and discovered that Youngblood's slip and fall had already occurred. There was no evidence showing how long Youngblood had been on the floor before the bagger arrived, and no evidence that, after being notified of the spill, the cashier or the bagger delayed their response to remove the spill.

Youngblood points to evidence that Food Depot trained its employees to respond to spills discovered on the floor by having one employee stand over the spill while a coworker brings a mop and bucket. Youngblood claims that the failure of the Food Depot employees to adhere to this training in the present case created a factual issue as to whether Food Depot exercised ordinary care in responding after receiving notice of the spill. We find no merit to this claim. Even if adherence to this training might have reduced the chance of Youngblood's slip and fall – a matter of pure speculation – this does not change the fact that, under the circumstances, Food Depot responded within a reasonable time and exercised ordinary care after receiving notice

9

of the spill. To the extent Food Depot policies or training regarding spills established a standard of care in excess of the standard of ordinary care applicable under the circumstances, the trial court correctly refused to hold Food Depot to the heightened standard. Although a company's private policy may be admissible for the purpose of illustrating negligence (or lack thereof) under circumstances to which the policy would be applicable, the policy does not establish the governing standard of care. *Foster v. Southern R. Co.*, 42 Ga. App. 830, 832 (157 SE 371) (1931); *Southern R. Co. v. Allen*, 88 Ga. App. 435, 449-450 (77 SE2d 277) (1953); *Evershine Products, Inc. v. Schmitt*, 130 Ga. App. 34, 38 (202 SE2d 228) (1973).

The trial court correctly concluded there was no basis to impose liability under OCGA § 51-3-1 and that Food Depot was entitled to summary judgment.

*Judgment affirmed. Doyle, C. J., concurs. Ray, J., concurs in judgment only.*